30033. MUNSFORD et al. v. THE STATE.

INGRAM, Justice.

Appellants, George Munsford, Riley Jerome Williams and Emmett Daniels, were jointly indicted and subsequently tried together before a jury in the Superior Court of Ware County for the offense of armed robbery. All three were found guilty by the jury. A pre-sentence hearing was then conducted before the court without the intervention of the jury and the following sentences were imposed by the trial judge: Munsford received a prison term of 14 years; Williams received a prison term of 12 years; and Daniels received a prison term of 10 years. Appellants have filed a joint appeal to this court.

The evidence at trial disclosed the following events: On November 30, 1974, around 3:30 p.m., appellant Munsford, a young black male, entered the grocery store operated by Mr. and Mrs. D. C. McDuffie in Waycross, Georgia, bought some matches and left the store. Mrs. McDuffie noticed two other black men with him outside in a white-looking car parked in the driveway, but could not identify Williams and Daniels as these two men. She and her mother were in the store when about an hour later

Williams and Daniels, two young black men, entered the store. Daniels pointed a pistol at Mrs. McDuffie. After taking Mrs. McDuffie's billfold and also taking money from the cash register, Williams and Daniels left the store and warned the women not to follow them. Mrs. McDuffie called the sheriff's office and received prompt response to her call about the robbery. She gave the officers a description of all three men she had seen earlier and of the white-looking car she saw outside when Munsford came in the grocery store to purchase matches. An officer who received a radio report about the robbery began driving toward the store. He noticed a white car occupied by one young black man parked behind a church, known by the officer to have a white congregation. The church was a few hundred yards from the store. As the officer drove up to the car, the occupant, appellant Munsford, got out and raised the hood. The officer asked Munsford for some identification and why he was parked behind the church. Munsford replied he had no identification and also told the officer he was working on the car for the owner. He stated the car got overheated so he stopped to get water for it. The officer checked the car, found it was not hot and then arrested Munsford and placed him in the police vehicle. At that time, the officer advised Munsford of his rights under Miranda v. Arizona, 384 U. S. 456. Munsford was then taken to the grocery store where Mrs. McDuffie identified him as the man who came into the grocery store to buy matches that afternoon before the robbery.

Meanwhile, a search was on for the two men who actually carried out the robbery. The officer who apprehended Munsford returned to the churchyard where he had found Munsford and noticed some tennis shoe tracks. The officers had received a report that two men had been seen crossing some private property fairly nearby and their search centered in the vicinity of a cemetery. Bloodhounds were brought in to follow the footprints and to assist in the detection. The dogs led the search into a lot near the cemetery where appellant Daniels was found hiding among tall reeds. Appellant Williams was then discovered squatting nearby amidst other reeds and both men were placed under arrest. The officer found a loaded pistol on the ground near Williams

and a paper bag containing money.

All three men were taken to the sheriff's office and around 5:30 p.m. that same day Mrs. McDuffie went there and identified the appellants. She picked Williams and Munsford out of a group lineup but identified Daniels in a room by himself. Her in-custody identification of Daniels was excluded from evidence by the trial judge. After appellant Williams was arrested, he was given Miranda warnings but he told the officers "that he, along with Emmett Daniels, had been taken to the . . . grocery in a white car driven by George Munsford." Later that evening, an officer of the Waycross Police Department learned that appellant Daniels wanted to talk to him. Daniels was advised of his Miranda rights but nevertheless he told the officer that he and appellant Munsford had planned the robbery of the grocery store and that Munsford drove them to the store where he and Williams went in and carried out the robbery. He further told the officer that he and Williams were supposed to go back to the car Munsford was driving and that it was to be at the church but that "things got confused and they didn't make it." They ran from there to the cemetery.

Appellant Daniels made a statement to another officer on the following day in which he repeated essentially the same story he had given earlier. He was not warned again of his Miranda rights before making this statement. On December 1, 1974, appellant Williams made another statement to the police after he was given Miranda warnings. In his statement Williams said that on the day of the robbery he was picked up by Daniels and a man known to him only as George and that the three of them went to the grocery store. He further stated that he and Daniels went in the store but that it was Daniels who pulled out a pistol, announced a holdup and took money and a billfold. Williams also stated that after leaving the grocery store he and Daniels went to the cemetery and then into the reeds of the nearby lot where they stayed until the officers found them.

There was also testimony at the trial by two officers about the tennis shoe tracks that were seen near the car in which appellant Munsford was found and near the area where the other two appellants were apprehended. A

photograph of the tracks near the car was admitted into evidence over objection and there was testimony that the photograph was an accurate representation of the tracks seen close to the car where appellant Munsford was arrested. One officer also testified that the tracks shown in the photograph matched the tennis shoes worn by appellant Williams at the time of his arrest. These shoes were obtained from Williams with his consent after his arrest but were subsequently returned to Williams and he wore them to the trial.

Only appellant Williams testified at the jury trial. He told the jury he went in the grocery store with Daniels but did not know that Daniels was going to rob the store. He testified that he tried to stop the robbery by telling Daniels to put the gun down. Williams denied that he participated in the planning or execution of the robbery.

The first issue to be decided is whether the trial court erred in admitting the responses of appellant Munsford to the officer when he was first discovered parked behind the church. It is argued in support of this contention that since these statements were made prior to Munsford's receiving any Miranda warnings they were inadmissible. As we read the transcript, Munsford had not been taken into custody or otherwise deprived of his freedom of action in any significant way at the time these answers were given by him to the officer's initial inquiry. For this reason, the custodial interrogation condemned by Miranda was not present. The inquiry made by the officer upon first seeing Munsford was a permissible threshold inquiry rather than a custodial inquiry for the purpose of gathering evidence of guilt. Miranda is not applicable in these circumstances. See *Shy v. State,* 234 Ga. 816. A similar enumeration of error urges the trial judge erred by admitting into evidence the testimony of an officer relating the incriminating statement made to him by appellant Daniels on the day following his arrest. The argument presented on this issue is that this statement should have been excluded because of the failure of the officer to renew the Miranda warnings given to this appellant the day before when he made an earlier statement to a different officer. We note the transcript shows that on the later occasion the officer did first ask

appellant Daniels if he still understood his "legal constitutional rights" and appellant indicated that he understood them. This issue was decided adversely to appellants in *Moten v. State,* 231 Ga. 642 (203 SE2d 527) and that case is controlling here. We find no merit in this enumeration of error.

Three enumerations of error relate to testimony concerning the tennis shoe tracks observed by the officers and the photograph of the shoe tracks found by the car in the churchyard. Appellants argue the photograph was not relevant and should have been excluded from evidence on this ground. We cannot agree with this contention in view of the testimony of the two officers regarding the tennis shoe tracks which were linked to one or more of the appellants. Their testimony made the photograph relevant and illustrative of the appellants' connection with the crime. Appellants also contend the trial judge erred in permitting one of the officers to testify that he examined the tennis shoes worn by appellant Williams upon arrest and that the tracks shown in the photograph matched the soles of these shoes. The officer's opinion was admissible under Code Ann. § 38-1708 since he testified to the facts upon which his opinion was based. Nor was it error to fail to exclude this testimony because the tennis shoes themselves were not admitted into evidence. The Best Evidence Rule urged by appellants in support of this contention is inapplicable. See *Chambers v. State,* 141 Ga. 652 (1) (81 SE 880). "The rule has nothing to do with evidence generally, but is restricted to writings alone." Encyclopedia of Georgia Law, Evidence, Vol. VII; Best Evidence Rule, § 60, p. 313.

In several enumerations of error, appellants argue the trial court erred in admitting into evidence the incriminating statements made by appellants Daniels and Williams after their arrest. The rule of law urged in support of these enumerations is that a confession or incriminating statement made after the criminal enterprise has ended is admissible only against the person making the statement and not against the alleged co-conspirators. Code Ann. § 38-414. This rule is a limitation upon Code Ann. § 38-306, which provides that after the conspiracy is shown the declarations of one

during the pendency of the criminal project are admissible against all the alleged conspirators. Thus, in the present case the crucial question in determining whether the statement of one conspirator may be used as evidence of guilt against another conspirator is whether the conspiracy had ended at the time the statement was made.

In *Chatterton v. State,* 221 Ga. 424 (5) (144 SE2d 726), this court said: "The rule is that so long as the conspiracy to conceal the fact that a crime has been committed or the identity of the perpetrators of the offense continues, the parties to such conspiracy are to be considered so much a unit that the declarations of either are admissible against the other." See also *Evans v. State,* 222 Ga. 392, 402 (150 SE2d 240), where the defendant and his co-conspirator, at the time of an incriminating statement by the co-conspirator, were concealing their identity and keeping secret the fact that they had allegedly killed the deceased and denying their guilt following commission of the alleged crime.

In the present case, each of the statements made by appellants Williams and Daniels was made after all of the appellants were in the custody of the law enforcement officers. There was no showing of a concealment of the crime or the identity of those involved in it. There no longer remained any objects of the conspiracy to be furthered or accomplished, nor was there any showing to hinder or mislead the authorities in their gathering of evidence for the prosecution of the case. The statements of Daniels and Williams were mere narrations of past events and cannot be said to have been made in concealment of the conspiracy. *Hill v. State,* 232 Ga. 800, 802 (209 SE2d 153). Therefore, these statements were admissible only against the person who made them and were not admissible against the other parties to the alleged conspiracy to commit the armed robbery.

Counsel for appellants objected to the admission into evidence of testimony of these statements on the grounds that each statement "would be hearsay as to the other two defendants." We agree but, in this joint trial, the testimony relating each of the statements was admissible "against at least one of the co-defendants in each instance.

Code Ann. § 38-414. The trial court was not requested to limit the admissibility of such testimony to the co-defendant against whom it was admissible. We find no error here." *Poston v. State,* 233 Ga. 828, 830 (213 SE2d 686). It would be reversible error for the trial judge to refuse to limit the testimony to the person who made the statement to the officer upon being requested to do so. However, since the testimony was admissible, though only for a limited purpose, the trial judge did not err in refusing to exclude it completely from the evidence. Under this posture of the case the statements can be considered as evidence against the persons making the statements but cannot be considered against the other parties. The questions considered in *Morgan v. State,* 231 Ga. 280 (201 SE2d 468) are not in issue in this case.

Appellants also contend that the trial court erred in denying their motion for a directed verdict of acquittal and that the evidence against them was legally insufficient. Admittedly, the evidence of guilt of the appellant Munsford is weaker than the evidence of guilt of the other two appellants when the statements of Daniels and Williams are disregarded as to Munsford. Nevertheless, we are of the opinion that there is still sufficient direct and circumstantial evidence of Munsford's complicity to authorize the jury's verdict. See *Cummings v. State,* 127 Ga. App. 695 (194 SE2d 629); and *Merino v. State,* 230 Ga. 604 (198 SE2d 311). The evidence is clearly sufficient to support the verdict of guilty of appellants Williams and Daniels.

The final enumeration of error asserts that the trial court erred in considering at the pre-sentence hearing before the court, without the jury, pre-sentence investigation reports made by probation officers of the Waycross Judicial Circuit over appellants' objection. These reports were not offered by the state but were requested by the court. They contained references to cases in the Ware County Juvenile Court and in the Ware County Recorder's Court of which appellants received no notice prior to trial. The court properly considered three prior felony convictions of appellant Munsford and one prior felony conviction of appellant Williams which the state had made known to the appellants prior to trial.

However, appellants contend it was improper for the court to consider the adverse information contained in the probation officers' reports. The state did not seek either the death penalty or life imprisonment in this case.

Code Ann. § 27-2503 (a) provides the procedure to be followed in pre-sentence hearings in all felony cases except when the death penalty may be imposed. Under the mandate of this Code section, the trial judge is authorized to consider at the pre-sentence hearing "only such evidence in aggravation as the State has made known to the defendant prior to his trial." However, under Code Ann. § 27-2709, the trial judge is also authorized before pronouncing sentence to consider investigation reports prepared by probation officers of the circuit for the purpose of deciding whether to suspend or probate all or part of the sentence to be imposed in a case. These reports may inure to the benefit or to the detriment of the defendant, but they are frequently helpful to the trial judge and serve a useful and appropriate purpose.

The information in these reports cannot be regarded as "evidence" either in aggravation or in mitigation as such reports are not a part of the evidence introduced at the pre-sentence hearing. Undoubtedly, in many instances they also have been considered by the trial judge in fixing the length of the sentence. The 1974 statute, Code Ann. § 27-2503(a), does not permit this use of those reports. Therefore, if a pre-sentence report contains any matter adverse to the defendant and likely to influence the decision to suspend or probate the sentence, it should be revealed to defense counsel by the trial judge in advance of the pre-sentence hearing to give the accused an opportunity for explanation or rebuttal. However, since the statute (Code Ann. § 27-2709, 10) does not require the content of the report to be shared with counsel, we must conclude that it is in the sound discretion of the trial judge whether to reveal the content of the report to counsel for the accused and for the state.

We hold that the trial court was authorized to consider these reports for the purpose of deciding whether to suspend or probate all or some part of the sentences to be imposed in the case as provided in Code Ann. § 27-2709. Since the transcript does not show these reports were used

by the trial judge to increase the length of the sentences imposed in the case, we find no cause for reversal. The sentences given were well below the 20-year maximum sentence which could have been imposed in the case and no resulting prejudice to appellants is shown by the consideration which the trial judge gave to these pre-sentence reports.

*Judgment affirmed. All the Justices concur, except Gunter and Jordan, JJ., who concur in the judgment only.*

SUBMITTED JUNE 11, 1975 — DECIDED SEPTEMBER 11, 1975.

*E. Kontz Bennett, Jr., Dennis J. Strickland,* for appellants.

*Dewey Hayes, District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.