appellee.

## 31374. WELCH v. THE STATE.

HALL, Justice.

Lonnie Welch, Walter Swain and Ralph Harris were jointly indicted, tried and convicted for kidnapping, rape and aggravated sodomy. Each received three consecutive life sentences.

The state's evidence consisted of the testimony of the victim, alleged oral confessions by two of the defendants, the results of law enforcement investigations, and the results of certain tests conducted by the State Crime Lab on evidence found at the Swain residence and inside Welch's automobile. The defense relied primarily on the testimony of all three defendants that the sexual acts were consensual, that none of the defendants made any confessions and that the two searches were illegal.

The victim testified that she was driving from Milledgeville to College Park in the early morning hours of August 4, 1974. After she passed through Eatonton her car overheated, so she pulled over and parked beneath the lighted entrance to Rock Eagle Park to wait until the car cooled off. She locked the car doors and had just put her head down on the seat when she heard a car pull up behind her. She looked out and saw a blue Volkswagen with cut fender skirts. When she saw a black man approaching, she started the car and put it into gear in an attempt to get away. Her car jumped forward, the door on the driver's side flung open, the car spun around and finally wrecked. When the door opened the man grabbed her. He then proceeded to hit her in the stomach, pulled her from the car and dragged her by the hair to the Volkswagen. In the process her dress was torn and her belt ripped off. She was shoved into the car where two other black men waited and was again hit in the stomach and physically abused; a pistol was also shoved into her mouth.

She was taken to defendant Swain's house. Her eyes were covered with a temple-to-temple tape blindfold, but she asserted that the tape was loose and therefore she was able to see her assailants and the surroundings despite

the tape. Once in the house the prosecutrix was told at gunpoint to take off all her clothes. She did what she was told, fearing for her life. The three defendants then proceeded to rape her repeatedly, individually and as a group. These actions consisted of normal intercourse, anal intercourse, masturbation, and oral sex, all against her will. Later defendants shoved a broom handle and a beer bottle into her vagina. After defendants had sexually abused her, they placed a pistol on her stomach and ordered her to shoot herself. In order to end the torture, she took the pistol, placed it against her heart and pulled the trigger. The hammer clicked on an empty chamber, and defendants laughed uproariously. During this time the defendants inquired if her husband, parents or roommate would be willing to pay a ransom.

The defendants then walked the naked prosecutrix back to the car. They drove her to the edge of a creek, asked her if she could swim (she said yes) and shoved her down the rocky creek bank. The victim crawled up the bank and went to a nearby house for help. The residents found her in a naked, disheveled and very upset state; she was taken to a hospital where she was treated and released. While she was at the hospital she told her story to law enforcement personnel. She related a detailed description of the automobile, the house, and her abductors.

Defendants contend that they first spotted the prosecutrix at the park entrance, outside her car, waving her arms in an apparent attempt to flag someone down. They stopped to help her start her car, but were unable to, so offered to take her back to Eatonton. On the way the prosecutrix and one of the defendants decided they wanted to smoke some marijuana. Since Welch didn't want them smoking in his car, they decided to go to Swain's house. When they arrived they talked, listened to the radio, danced, and smoked marijuana. Later, the prosecutrix and defendant Swain went into the bedroom and had consensual sex. Welch and Harris then had sex with her, followed by some oral sex acts and group sex, all consensual. Swain and the prosecutrix exchanged souvenirs. She gave him a hair ornament and he gave her a ruby heart necklace.

As morning approached, the four got back in the car and rode around. After awhile she asked Welch to stop the car so she could go to the bathroom. For some unexplained reason, she suddenly ran off down a fishing trail into the woods near Crooked Creek. The defendants attempted to find her, but could not so they went home.

At the hospital the prosecutrix was examined by a physician who found several bruises on her body, abrasions and bruises on her left shoulder, a laceration on her neck, and a bruise on her left temple. Her vagina was red and contained sperm. The photos in the record, taken at the hospital, confirmed she was badly bruised.

When officers examined the scene they found her abandoned, wrecked automobile, and a belt and belt loop on the ground near by. In the car were a pair of shoes, a pocketbook, and a loaded pistol. The lock on the driver's side was found to be defective.

Later that day the prosecutrix saw and identified the Volkswagen. A tag check indicated it belonged to Bill Rice, an attorney. Rice stated that defendant Welch was an employee of his and had possession of the automobile. Rice signed a consent to search the automobile. Subsequently, Welch was stopped in the subject automobile. At the time he was stopped there were two deputies, a state trooper, a GBI agent, two State Crime Lab experts, and an assistant district attorney in the immediate vicinity. Welch was read his rights regarding the consent to search the automobile and was told that Mr. Rice had given his consent. Welch then signed a consent-to-search form. Welch was taken to the Putnam County jail in the sheriff's car. Welch's automobile was searched; after some long blond hair was found therein, Welch was placed under arrest and given his Miranda warnings.

The GBI agent in charge testified that while Welch would never sign a waiver of his rights he did voluntarily confess orally to the crime, implicating defendants Harris and Swain as well as himself. Welch testified that while he did talk to the agent, he never confessed to anything; also that he had requested a lawyer.

Defendant Harris turned himself in several days later. The GBI agent in charge testified that Harris was

given his Miranda warnings and that while he, too, refused to sign any waiver, he did voluntarily confess orally to the crime, implicating ·Welch and Swain as well. Harris testified that he never confessed; he also stated that he had asked for a lawyer. Harris could not read or write.

Swain was the last defendant arrested. He never confessed to any participation in the crime. Swain did, however, consent to a search of his house. Officers found hairs the same color as the prosecutrix'; upon examination they were shown to have the same common origin as well. Seminal fluid was found both on a bedspread and on a washcloth. Her hair clasp was found in the bottom of a chair in the living room. A beer bottle and broom were also found, although neither tested positive for seminal fluid.

At the trial the oral confessions allegedly made by Welch and Harris were read by the GBI agent to the jury, and upon timely motion the name of defendant Swain was deleted therefrom.

1. Appellants contend the trial court erred in denying their motion for change of venue on the grounds of prejudicial pre-trial publicity in local newspapers and alleged threats against one of the defendants while in jail. Code Ann. § 27-1201.

The test as to whether newspaper publicity has so prejudiced a case that an accused cannot receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to guilt or innocence of the accused from reading such newspaper articles. *Krist v. Caldwell,* 230 Ga. 536, 537 (198 SE2d 161) (1973). The newspaper articles introduced were merely factual and not inflammatory. Appellants failed to produce evidence that the members of the traverse jury had fixed opinions as to appellants' guilt based on those newspaper articles. See *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Dobbs v. State,* 236 Ga. 427, 429 (224 SE2d 3) (1976). The court properly denied a change of venue based on adverse pre-trial publicity.

Appellant Welch's allegation of a three-week-old threat was not sufficient to show that there was danger of violence being committed on appellants, and the trial

court did not abuse its discretion in denying the change of venue based on these threats.

The decision to grant a change of venue motion lies within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Allen v. State,* 235 Ga. 709, 713 (221 SE2d 405) (1975); *Jarrell v. State,* 234 Ga. 410, 415 (216 SE2d 258) (1975). The prospective jurors passed the test of impartiality; there was no error in overruling the motion.

2. We find no error by the trial court in overruling defendants' motion for continuance and renewed motion for continuance. The case was originally scheduled for trial on October 1. Appellants requested a continuance until the December Term or, in the alternative, for a week to allow them to prepare for trial. All three defense counsel were appointed. After these appointments two of the defendants refused to talk to their appointed counsel until ten days prior to trial, alleging that they had retained counsel. Appellants asserted that to deny continuance would deny these defendants effective representation because of inadequate preparation. The trial judge granted a one week extension, but denied an extension until the December Term, primarily based on the defendants' right to a speedy trial. The judge felt that the week extension gave counsel adequate time to prepare, especially since the trial was joint and all three lawyers could work together on the preparation. The court's granting of a one week continuance was not an abuse of discretion under the facts of this case. *Smith v. State,* 235 Ga. 620, 621 (221 SE2d 41) (1975).

3. Appellants contend that it was error for the transcript to fail to include the voir dire of all prospective jurors in its entirety as ordered by the trial court. Contrary to appellants' allegation, the trial court did not order the reporter to *transcribe* the entire voir dire. The court ordered her to *record* the entire voir dire; the court reserved ruling on whether the court reporter would have to transcribe the entire voir dire. Unlike *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975), the death penalty was not imposed in this case. Additionally, appellants have failed to allege how they were harmed, except that they had to appeal based on an incomplete record.

4. Appellants contend that the trial court erred in overruling defendants' motion to prevent the examination of prospective jurors regarding capital punishment on voir dire. The defense asserts that several prospective jurors were struck because of their general reservations alone. Both G. T. Jones, and J. B. Simmons were struck for cause. Jones stated he would not vote to impose the death penalty, regardless of the evidence. J. B. Simmons first stated she would oppose the death penalty even though the state proved the crimes charged; later she said that if the crimes were terribly vile and horrible, she might consider the death penalty. Her testimony was confusing and because of the conflict the judge struck her.

Even if either of these jurors was improperly struck, appellants can demonstrate no harm. They did not receive the death penalty and, in the absence of injury, this enumeration presents nothing for review. *Coker v. State,* 234 Ga. 555, 559 (216 SE2d 782) (1975). See also *Porter v. State,* 237 Ga. 580 (1976).

5. Appellants contend that the trial court erred in ruling against defendants' challenge to a prospective juror, thereby requiring defendants to utilize unnecessarily one of their peremptory strikes. The prospective juror involved here was a former law enforcement official. The main thrust of the voir dire was whether he would give greater credence to the testimony of law enforcement officials. He said no. Subsequently the juror was asked several questions relating to the burden of proving the guilt of the defendants. He was obviously confused with some of the fine distinctions and had to have several questions rephrased. At one point the juror stated that he thought the defendants should have to prove their innocence; this is why the defendants' counsel felt this juror should be disqualified for cause. Earlier the juror had stated that he would require the state to prove that the defendants were guilty. The judge ruled that the questioning was becoming too technical, and that such legal burden requirements would be given to the jurors in the charge. The judge overruled the challenge and qualified the juror.

General questions and technical legal questions are not proper voir dire questions. *McNeal v. State,* 228 Ga.

633, 636 (187 SE2d 271) (1972). The conduct of the voir dire is within the discretion of the trial court and his rulings are proper absent some manifest abuse of discretion. *Gatlin v. State,* 236 Ga. 707, 708 (225 SE2d 224) (1976); *Whitlock v. State,* 230 Ga. 700, 706 (198 SE2d 865) (1973). Whether to strike a juror for cause lies within the discretion of the court; the record fails to disclose any abuse of that discretion. Furthermore, there is no evidence that defendants utilized all of their peremptory strikes. Therefore they were not harmed even if the trial judge erred in not striking this juror for cause. Cf. *Coleman v. State,* 237 Ga. 84, 92 (226 SE2d 911) (1976).

6. Appellants contend that the trial court erred in overruling defendants' motion to challenge the array of the grand jury in that persons between the ages of 18 and 21 were arbitrarily, systematically and unconstitutionally excluded and the jury lists did not represent a fair and representative cross section of the community. The three defendants were all in their early 20s. By law, only persons above the age of 21 can serve as grand jurors. Code Ann. § 59-201. The Acts of the General Assembly (Code Ann. §§ 74-104, 74-104.1) lowering the age of majority from 21 to 18 had no effect on the requirement that grand jurors be at least 21 years of age. *State v. Gould,* 232 Ga. 844, 845 (209 SE2d 312) (1974). The exclusion of persons between 18 and 20 years of age from service on the grand jury does not violate the due process or equal protection clauses of the Georgia Constitution or the United States Constitution. *Estes v. State,* 232 Ga. 703 (208 SE2d 806) (1974).

In Georgia the grand jury of a particular county is to be chosen from the registered voters list. Code Ann. §§ 59-106, 59-201. To challenge the array of the grand jury successfully the appellants must prove a prima facie case of unconstitutional discrimination. *Gibson v. State,* 236 Ga. 874, 879 (226 SE2d 63) (1976). The day this motion was heard the defendants' counsel questioned the jury commissioners as to their method of jury selection. The commissioners testified that they went through the county voter list person by person, eliminating those they thought to be unqualified based on one or more of the jury commissioners' personal knowledge of each individual.

The voter list apparently had no age or race indicated thereon, although the first portion of the list was exclusively white and the last portion exclusively black. The trial judge overruled this motion because, on the day scheduled for hearing, the defendants' counsel came prepared with only the voter list and had no comparative figures or percentages for the voter list versus the jury list. Counsel requested more time to compute these figures and percentages which the court denied.

Based on the evidence actually submitted, we find that the trial court did not err in denying this motion.

7. Appellants contend that it was error for the transcripts to fail to include all arguments of counsel on pre-trial motions, as so ordered by the trial court. The trial court ordered the court reporter to *record* all arguments of counsel, but reserved ruling on whether all arguments would have to be *transcribed*. The court stated that to save money and expedite preparation of the transcript arguments might be deleted if no issues were involved. The appellants have failed to allege the harm caused by such a failure, except that they were forced to use an incomplete record on appeal. We find no abuse of discretion by the trial judge in not ordering that all arguments of counsel be transcribed.

8. Appellants contend that the trial court erred in overruling defendants' motion for appointment of expert witnesses to conduct scientific examination of tangible evidence on behalf of the indigent defendants. This court has held that the granting of a motion for the appointment of expert witnesses is within the sound discretion of the trial court. *Holsey v. State,* 235 Ga. 270 (3) (219 SE2d 374) (1975) (refusal to provide psychiatric examination of defendant did not constitute error).

The only disputed issue of fact in this case was whether appellants raped the prosecutrix or whether the sexual intercourse was voluntary. Dr. Negrin testified that he found sperm in her vagina, but appellants admitted the intercourse took place. The State Crime Lab expert testified that the hair found in Welch's car and Swain's house could have been hers, but appellants never denied she was in Welch's car or Swain's house. The issue boiled down to one of credibility.

Since the appellants corroborated the testimony of the state's expert witnesses, there was no need for the court to appoint separate expert witnesses. Therefore, the court properly denied appellants' motion.

9. Appellants contend that the trial court erred in overruling defendants' motion to suppress evidence that was the fruit of an illegal search of defendant Welch's automobile. The Volkswagen driven by Welch was owned by Bill Rice. Welch was employed by Rice and was given use of the automobile as part of his employment. Both Rice and Welch consented to the search of the automobile, but appellants argue that Welch's consent was invalid because it was coerced (given in the presence of an array of law enforcement officials, given after he was told Rice had consented, etc.), and therefore the hair found therein should have been suppressed.

One of the recognized exceptions to the requirement of both a warrant and probable cause for a search is that it be conducted with the consent of the party subjected to the search. *Guest v. State,* 230 Ga. 569, 571 (198 SE2d 158) (1973). A consent which is the product of coercion or deceit on the part of the police is invalid. *Code v. State,* 234 Ga. 90, 93 (214 SE2d 873) (1975); Bumper v. North Carolina, 391 U. S. 543 (1967).

The United States Supreme Court has held that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." United States v. Matlock, 415 U. S. 164, 170 (1974). Therefore the owner's consent was valid since he was in legal possession of the automobile. See *Woodruff v. State,* 233 Ga. 840 (3) (213 SE2d 689) (1975). Furthermore, there is no evidence that Welch was coerced into consenting. Although there were many law enforcement officials in the area, there is no evidence that Welch was forced in any way. While Welch was told that Rice had consented and that they would search whether or not Welch consented, this was in fact the case. Welch was not being deceived. Moreover, the only evidence seized was hair which could have been the victim's. Since Welch did not deny that the prosecutrix had been in the car, even if the search was invalid it would have been harmless.

10. Appellants contend that the court erred in overruling defendants' motion to suppress evidence seized at defendant Swain's house. The defendant failed to support this enumeration of error by argument or citation. Therefore under Rule 18 (c) (2) of this court the same is abandoned. Even if not abandoned, Swain consented to the August 7 search of his house and officers obtained a search warrant for the subsequent search.

11. The trial court did not err in failing to grant defendants' motion for a mistrial. Appellants contend that the trial court charged the jury in its preliminary instructions that it might have to have hearings during the trial outside the jury's presence to determine the validity of confessions. They contend this caused the jury to expect that there had been confessions which were prejudicial to the defendants.

It was defense counsel who requested that the jury be instructed regarding conferences during trial outside the presence of the jury. The court did so and used confessions and exculpatory statements as examples. The judge clearly specified that these were only examples and stated that he did not know whether either of these would be found in this particular case.

The granting of a mistrial lies within the discretion of the trial judge and will only be granted when it is necessary to preserve the right of a fair trial. *Allen v. State,* 235 Ga. 709, 711 (221 SE2d 405) (1975). The judge's opening statement to the jury did not prevent a fair trial; it helped insure one. The trial court did not abuse its discretion in denying the motion.

12. Appellants' enumerations of error numbers 12, 13, 16 and 17 are concerned with the admission of the alleged confessions of Harris and Welch and the charge to the jury regarding those confessions.

At the Jackson v. Denno hearing GBI agent Baker testified that he advised Welch and Harris of their constitutional rights and that afterwards both Welch and Harris were willing to talk to him and in fact confessed to the crimes charged. Welch admitted that he had been advised of his constitutional rights but claimed that he had asked for a lawyer and never confessed. Although Harris admitted his memory was not very good, he

claimed to have been warned only of his right to remain silent. He said he willingly talked to Baker but never confessed. The trial judge determined that both confessions were voluntarily made after each defendant had been given his full Miranda warnings. This determination rested entirely on whether the trial judge believed each defendant's version or the GBI agent's version. Factual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. *Gibbs v. State,* 235 Ga. 480, 483 (220 SE2d 254) (1975). See also *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974); Lego v. Twomey, 404 U. S. 477 (1972).

Secondarily, there is the question of whom the two confessions should have been admissible against. While the trial judge required that Swain's name or any reference to him be deleted from the two confessions when they were read to the jury because he never had confessed, he ruled that since both Welch and Harris agreed to testify and since their confessions were interlocking and implicated each other, each would be admissible against the other. The defense asserts that (1) the confessions were improperly admitted against all three defendants, (2) that no confession should have been admissible against Swain, and (3) that Welch's and Harris' confessions should only have been admissible against themselves. The defense relies on its interpretation of the "enterprise is ended" conspirator cases (*Munsford v. State,* 235 Ga. 38 (218 SE2d 792) (1975); *Hill v. State,* 232 Ga. 800 (209 SE2d 153) (1974) and the Bruton line of cases (Bruton v. United States, 391 U. S. 123 (1968)).

The Georgia law dealing with the admission into evidence against a criminal defendant of statements made by a co-conspirator is contained in two Code sections. Code Ann. § 38-306 states that "after the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." Code Ann. § 38-414 states that "the confession of one joint offender or conspirator, made after the enterprise is ended, shall be admissible only against himself."

The most recent decision of this court on these Code sections is in *Crowder v. State,* 237 Ga. 141 (1976). Generally, the pendency of the criminal project has been held to include the accomplishment of the crime itself plus concealment of the crime and/or the identity of the perpetrators. *Evans v. State,* 222 Ga. 392, 402 (150 SE2d 240) (1966); affd. as Dutton v. Evans, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970). The rule set forth in *Crowder* (p. 152) is that "a confession made to police by a conspirator (*in which other conspirators are identified and their participation is described*) is not made during the pendency of the criminal project (i.e., is not made during the concealment phase of the conspiracy) but is made after the enterprise is ended." (Emphasis supplied.) See also *Munsford v. State,* 235 Ga. 38 (218 SE2d 792) (1975). In this case Welch's statement was made before Swain and Harris were apprehended and Harris' statement was made before Swain was apprehended, but both Welch and Harris identified the other conspirators involved and their participation. Under *Crowder* and *Munsford,* therefore, the conspiracy was at an end and the confessions should only have been admissible against the one making it.

Bruton v. United States, 391 U. S. 123 (1968) is inapposite to the facts here. There is no Bruton problem in this case. The crucial difference between Bruton and this case is that all three defendants took the stand and testified; all three were afforded their right of confrontation and had the opportunity to make a thorough and sifting cross examination of one another.

We turn now to the question of whether the nonconstitutional error of admitting Welch's and Harris' confessions against each other as well as against themselves was harmless under the facts of this case. Where the evidence erroneously admitted is merely cumulative of properly admitted evidence, no harm is suffered by the accused. *Bryant v. State,* 236 Ga. 790 (225 SE2d 309) (1976); *Johnson v. State,* 236 Ga. 519 (224 SE2d 376) (1976); *Graham v. State,* 236 Ga. 378 (222 SE2d 803) (1976); *Walker v. State,* 232 Ga. 33 (205 SE2d 260) (1974); *Salem v. State,* 228 Ga. 186 (184 SE2d 650) (1971). See also Milton v. Wainwright, 407 U. S. 371 (1972), where

the court found a constitutional error in the admission of an inadmissible confession to be harmless because of other cumulative unchallenged confessions.

The error here was harmless because the admission of Welch's confession against Harris were merely cumulative of the admission of Harris' confession against himself. The same was true as to the admission of Harris' confession against Welch.

13. We find no error by the trial court in admitting, over timely objection, the testimony of a state's witness whose name did not appear on the witness list and of whom the defense had no knowledge until the day he was used at trial. The district attorney stated in his place that the witness' relevant testimony was newly-discovered evidence and that the district attorney had learned of the testimony only that morning. See Code Ann. § 27-1403; *Butler v. State*, 226 Ga. 56 (4) (172 SE2d 399) (1970). The court offered to give appellants time to interview the witness and offered the use of the judge's chambers to insure privacy. Appellants declined, but to insure fairness the district attorney put the witness on the stand, outside the presence of the jury, and went through his testimony. The substance of the testimony was that when the victim came to his house he heard a car in the distance that sounded like a Volkswagen. Appellants made no further objection.

14. The trial court did not err in denying defendants' motion for a directed verdict and the evidence supports the verdict. The prosecutrix identified appellants as the men who raped her. Her testimony was corroborated by her physical injuries, her distraught condition at Peggy Fuller's home, her immediate outcry to Peggy Fuller and to law enforcement officers. Her belt loop and belt were found at the scene of the abduction. Hair similar to the prosecutrix' was found in Swain's house. Police also found her hair clasp in Swain's house, and seminal fluid was located on a washcloth and bedspread in the house. Agent Baker testified that appellants Welch and Harris confessed to the crimes, implicated one another, and stated that a third man was involved.

The facts detailed above are sufficient to show that the victim's account of the rape episode was sufficiently

corroborated by trial testimony of her dishevelment, nakedness, near hysteria and injury. See *Lynch v. State,* 234 Ga. 446 (216 SE2d 307) (1975). The jurors chose to credit the state's witnesses, and the evidence was clearly sufficient to sustain the verdict.

*Judgments affirmed. All the Justices concur, except Gunter, J., who concurs in the judgment only.*

SUBMITTED JULY 23, 1976 — DECIDED SEPTEMBER 28, 1976 — REHEARING DENIED OCTOBER 5, 1976.

*Gilmore, Waddell & Phillips, Thomas J. Phillips, Jr., Robert M. Boulineau, Peugh & Bradley, James E. Peugh,* for appellants.

*Joseph H. Briley, District Attorney, Arthur K. Bolton, Attorney General, Harrison Kohler, Staff Assistant Attorney General,* for appellee.