## 52557. BENEFIELD v. THE STATE.

CLARK, Judge.

This is an appeal from a conviction for sale of cocaine for which appellant was sentenced to fifteen years imprisonment. There are thirteen enumerations of error, including the denial of defendant's extraordinary motion for new trial.

The alleged sale occurred in defendant's automobile

at a time and place arranged by Hall, a paid informant for the Drug Enforcement Agency. The putative purchaser, Herndon, an undercover DEA agent, was introduced to defendant Benefield by Hall as being the informer's cousin.

The testimony of both Hall and Herndon is that defendant picked up a bag of cocaine from under the front seat, passed it to Hall (informer) sitting beside him. In turn Hall gave it to Herndon sitting in the rear seat, he then paying cash to defendant. Hall and Herndon testified the amount was $750.

Defendant in his sworn testimony stated he had neither offered cocaine for sale nor sold any. He further testified that Hall, his former employee, owed him some money and had arranged to pay him at this meeting at which Hall was to receive funds from his cousin, Sanders. "Sanders" was the name used by Herndon. Defendant claims he drove Hall to the site of the alleged sale only to receive payment of money owed him by his former employee. His testimony was that he saw Hall hand something to Herndon who in turn gave him, the defendant, $600. The jury chose to believe otherwise.

1. We deal first with defendant's thirteenth enumeration contending error in the denial of his motion "to suppress and to produce tapes and for transcripts of intercepted oral and telephonic communications made by agents in connection with the investigation of appellant."

Defendant alleged he had been the subject of a lengthy investigation by police authorities during which he had been the subject of numerous illegal wiretaps and "bugging." A lengthy hearing was held to determine the existence of the purported illegal intercepted com-munications and to prove the relation, if any, of such communications to the instant prosecution.

Defendant also moved in accordance with Brady v. Maryland, 377 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) for the production and in camera inspection of the state's files and evidence. The trial court conducted an in camera inspection of the DEA's files and the file of the district attorney. He noted in open court that the DEA file contained a transcript of four pages detailing the intercepted conversations of the defendant with another

party (not involved herein) during a one-day period. The date was not indicated. The trial court proceeded to *read* the contents of the transcript to defense counsel. As the court noted, the transcript had nothing whatsoever to do with the case before it.

Defendant was unable after a lengthy and exhaustive hearing to establish prima facie that the alleged interceptions were illegal, or that if illegal, fruits of the poisonous tree existed and would be used in evidence, or even that they were material to the illegal transaction for which he was being prosecuted. In Wong Sun v. United States, 371 U. S. 471, 487 (83 SC 407, 9 LE2d 441) (1962), the United States Supreme Court stated that "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " See Nardone v. United States, 308 U. S. 338 (60 SC 266, 84 LE 307) (1939) and Silverthorne Lumber Co., v. United States, 251 U. S. 385 (40 SC 182, 64 LE 319) (1919).

The trial court denied the motion to suppress, finding that no illegally or unreasonably obtained evidence connected with the charge existed, that no intercepted communications would be used, and that "the mere fact that the defendant had been under investigation for four years, without more, was insufficient to show that information gathered by agents in the course of the investigation related in any way whatsoever to the present case." The trial court stated it would follow the case closely to insure that no such evidence would be introduced. A careful reading of the lengthy trial transcript reveals without doubt that this promised course of action was carried out by the trial judge.

In the instant case all the evidence introduced against the defendant was direct evidence not derived from or related to any interceptions of communications made by the investigating authorities. The connection

between the allegedly improper eavesdropping and the evidence adduced at trial was so attenuated as to completely free and purge it of any taint. See *Cauley v. State,* 130 Ga. App. 278 (203 SE2d 239), cert. den., 419 U. S. 877 (95 SC 140, 42 LE2d 117).

2. In this same Enumeration 13 defendant asserts that he was entrapped so that a need exists for transcripts of any and all intercepted conversations so as to be able to prove entrapment. This is without merit. The trial transcript clearly shows that the defendant was a willing seller of cocaine to the undercover agent, and the authorities merely provided him with an opportunity to make a sale he was predisposed to make. "[T]here is no entrapment where the officer merely furnishes an opportunity to a defendant who is ready to commit the offense." *Hill v. State,* 225 Ga. 117, 119 (166 SE2d 338). See *Orkin v. State,* 236 Ga. 176, 195 (8) (223 SE2d 61).

3. Enumeration 2 concerns the failure of the court to grant a mistrial after the assistant district attorney made some allegedly improper remarks.

The trial judge took the necessary purgative action by means of a thorough and forceful instruction to the jury and rebuke to the prosecutor. His language in doing so was more than sufficient to remove any improper impression from the minds of the jurors. The extent of a rebuke and instruction is within the discretion of the court, and when, as here, the improper remark is cured by timely corrective action calculated to preserve the defendant's right to a fair trial, then we cannot say that the court abused its discretion in refusing to grant a mistrial. Code Ann. § 81-1009; *Shy v. State,* 234 Ga. 816, 824 (2) (218 SE2d 599); *James v. State,* 215 Ga. 213, 215 (4) (109 SE2d 735); *Domingo v. State,* 213 Ga. 24, 27 (4) (96 SE2d 896); *Westbrooks v. State,* 135 Ga. App. 807 (3) (218 SE2d 908). The second enumeration is accordingly without merit.

4. Nor do we find any merit in Enumeration 3 wherein defendant asserts as error another statement made by the prosecutor in the presence of the jury which dealt with possible violation of the sequestration rule. In this instance the trial court did not deem it necessary to take any corrective action. We fail to see how the colloquy

involved here was in any way prejudicial to defendant. It is the duty of the trial court to insure that the sequestration rule, once invoked, is adhered to. Code Ann. § 38-1703; *Nance v. State,* 123 Ga. App. 410 (181 SE2d 295). See also *Craig v. State,* 130 Ga. App. 689, 692 (4) (204 SE2d 307). There being no error, there was no need for corrective instructions.

5. Enumeration 4 concerns a statement made by the witness Hall which defendant asserts improperly placed his character in issue. On cross examination defense counsel attempted to impeach Hall by introducing into evidence an affidavit he had signed before trial and after the illegal occurrence wherein he stated that he had never seen the defendant break any law and had never seen the defendant in possession of illegal substances. On redirect the state attempted to explain the prior inconsistent statement of the witness by having him explain in detail the circumstances under which he signed the affidavit.

During this testimony Hall stated that a Woody Pierce brought the affidavit to him to be signed on behalf of the defendant, and that he signed the affidavit in the presence of Pierce. "Q. Who is he? A. He is a fellow that I know and fellow that I have been working on. Q. That you have been working on? A. Yes, sir. Q. What do you mean by that? A. The process of making buys from Mr. Pierce." The defense moved for a mistrial which was denied.

A few minutes prior to this the witness had testified that he signed the affidavit out of fear due to threats made to him through his family and because he was still operating "undercover" and wanted to protect that status and not let "them" know he was working for DEA.

" 'Where testimony as to a matter tending to discredit a witness has been introduced in evidence, or drawn from him on cross examination, it is proper to permit him to explain the matter in order to rebut its discrediting effect.' *Gazaway v. State,* 15 Ga. App. 468 (83 SE 857)." *Bivins v. State,* 200 Ga. 729, 741 (38 SE2d 273).

In *Montgomery v. State,* 223 Ga. 845, 848 (1) (165 SE2d 145), the state's eyewitness to a homicide was impeached on cross examination by an affidavit made prior to the trial contradicting her testimony. "[S]he was entitled to explain her reasons . . . and the jury could

consider this explanation in passing on her credibility. [Cits.] The jury could have believed her explanation that she gave a false account of the homicide because she was afraid of the defendant and did not want him to know that she was the one who had told of his participation in it." See also *Huff v. State,* 104 Ga. 521 (1) (30 SE 808); *Cameron v. State,* 66 Ga. App. 414, 417 (3) (18 SE2d 16); *Walton v. State,* 65 Ga. App. 124, 127 (6) (15 SE2d 455). Enumeration of error 4 is without merit.

6. In Enumeration 5 defendant asserts that a mistrial should have been granted when the state asked the witness Hall, in the presence of the jury, "You stated that one of your reasons for signing this was that you had received threats to yourself and to your family." Defendant contends that this question was inflammatory and highly prejudicial, putting his character into issue and inferring that it was the defendant who had threatened the witness.

This question was from the state during that part of its redirect examination of Hall wherein he was explaining why he had made a prior inconsistent statement in an affidavit. Earlier during this questioning the witness had stated that he had received threats through his family. See Division 5, above. In light of the court's ruling that the witness may explain why he signed the affidavit and his explanation concerning threats, it was proper for the state during its examination on this point to return to the question of threats. The state was not leading the witness, nor making any unjust inferences, but was merely restating what had already been testified to without objection. This is not error.

7. Appellant's first enumeration asserted error in the court permitting Herndon, over objection, "to express his opinion as to why a defendant might hand drugs to an informant who, in turn, hands them to an undercover officer." This witness was qualified to the satisfaction of the court as an expert in the field of undercover narcotics buying and investigation. He testified as to his experience in this area as well as having obtained specialized training at various state and federal schools for law enforcement officers. The question requested an opinion as to why drug sellers followed procedure which consisted

of handing contraband drugs to a third party for delivery to the purchaser. The witness answered that generally defendants "were under the misconception that if they did not give it [the drugs] to the agent, himself, that they wouldn't be able to be charged with the crime."

It is permissible for a law enforcement officer trained and experienced in a particular area of law enforcement to render an opinion based upon stated and observed facts. See *Fountain v. State,* 228 Ga. 306, 308 (5) (185 SE2d 62). He may, as an expert, testify about the behavior of a particular class or category of criminal offenders. See *Dandridge v. State,* 109 Ga. App. 33 (2) (134 SE2d 814). Additionally, it is permissible for him to explain the modus operandi of particular types of crimes and the activities of their perpetrators. See *Floyd v. State,* 100 Ga. App.453 (2) (112 SE2d 171); *Mills v. State,* 71 Ga. App. 353 (2) (30 SE2d 824); *Brown v. State,* 57 Ga. App. 838 (1) (197 SE 77); *Sable v. State,* 48 Ga. App. 174 (4) (172 SE 236); 31 AmJur2d 742, Expert and Opinion Evidence, § 180. Expert testimony such as that given here is helpful to a jury unfamiliar with the methods used by such criminals in perpetrating their crimes.

Defendant's first enumeration is therefore without merit.

8. Enumerations 6, 7, and 10 deal with defendant's pre-trial Brady motion and his extraordinary motion for new trial. These enumerations are limited in their argument to the state's failure to produce, as requested, certain information about its witness Hall. The information sought by the defense was Hall's criminal record, and statements made by him as well as discovery of any pending charges against him. The defense motion for the court to make an in camera inspection was granted.

The district attorney also stated in his place that he knew of no pending cases against the witness in Clayton County. Defense counsel did learn, however, that Hall was on probation in Fulton County for nonsupport and had been previously convicted of forgery, a felony. The district attorney also stated, and the court found, that no promises of leniency, immunity, award or benefit were made to Hall in connection with this or any other case.

After the trial and conviction of defendant it was learned that on August 29, 1975 a warrant for theft of services had been sworn out against Hall. Both Hall and Herndon apparently knew about the warrant which had not been served prior to or during the trial. Nor was Hall arrested until after defendant's conviction and this was based upon a new warrant because the original had not been served and had been lost or misplaced. At the time of his arrest Hall arranged for Herndon to provide a property bond for his release.

Appellant asserts that the failure to disclose the existence of the warrant and the manner in which it was handled was information which should have been disclosed under the Brady motion.

"The heart of the holding in Brady [v. Maryland, supra], is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." Moore v. Illinois, 408 U. S. 786, 794 (92 SC 2562, 33 LE2d 706) (1971), quoted in *Rini v. State,* 235 Ga. 60, 63 (218 SE2d 811).

Suppression of the warrant has not been shown. The evidence adduced at the hearing on the extraordinary motion does not show that anyone connected with the state engaged in illegal activity to "hide" or suppress the warrant. Additionally, there is no evidence in the transcripts or record to indicate any agreement or understanding with the witness which was not otherwise disclosed to the defendant. The fact that the witness Hall secured the assistance of Herndon in obtaining a bail bond at a time after this defendant's conviction is not supportive of any agreement or understanding in existence at the time of trial. "We agree with appellant that the existence of an agreement with a witness is relevant to that witness' credibility and that if an understanding or agreement exists, the prosecution must disclose it. See Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972) and *Allen v. State,* 128 Ga. App. 361 (196 SE2d 660) (1973). However, we cannot find,

in the absence of other evidence, that such an agreement existed merely because of the subsequent disposition of criminal charges against these witnesses for the state." *Fleming v. State,* 236 Ga. 434, 438 (224 SE2d 15).

If knowledge of the existence of the warrant was known and made available to the defendant at the time of trial it would have been of no help. It is improper to impeach a witness by showing that he is charged with an offense for which he has not been convicted. *Banks v. State,* 131 Ga. App. 215 (3) (205 SE2d 520). Evidence of arrest, accusation, warrant or bond is inadmissible and may not be shown for the purposes of impeachment. Only evidence of the *conviction* of a crime involving moral turpitude may be so used. *Durrett v. State,* 135 Ga. App. 749 (3) (219 SE2d 9); *Smallwood v. State,* 95 Ga. App. 766 (3) (98 SE2d 602). See *Johnson v. State,* 138 Ga. 265 (1) (75 SE 135).

The essential elements for the grant of a new trial based upon newly discovered evidence are: "(1) that the evidence has come to the knowledge of the moving party since the trial; (2) that it was not owing to the want of due diligence that the moving party did not acquire it sooner; (3) that it was so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." *Walters v. State,* 128 Ga. App. 232, 233 (196 SE2d 326) and cits.

Elements 3 and 6 mesh with the materiality requirement of Brady, and cannot be met here. The existence of a warrant is not material to the guilt or innocence of this defendant, and if it was admissible, which it is not, it would only be impeaching in nature. The defendant has had more than sufficient evidence with which to impeach this witness. Indeed, the defendant admits this in his brief, p. 26: "The jury knew that Hall was a central figure in this alleged sale of cocaine, they knew that he was a convicted felon, they knew that he was paid by the Drug Enforcement Administration for his services, and they knew that he had been convicted of abandonment."

Evidence of this warrant would have been merely cumulative. Newly-discovered evidence merely cumulative in nature is not a sufficient ground for the grant of a new trial. Code Ann. § 70-204; *Vinson v. State,* 127 Ga. App. 607 (3) (194 SE2d 583); *Walters v. State,* 128 Ga. App. 232, supra, (2).

Because the existence of the warrant as impeaching evidence is not favorable to the defendant, is not material to either his guilt or punishment, is inadmissible as impeaching material and is otherwise merely cumulative, the trial court did not err in overruling defendant's extraordinary motion for new trial. The disclosure of the existence of the warrant would not in any manner have changed the results of the trial. See *Money v. State,* 137 Ga. App. 779 (2) (224 SE2d 783); *Ross v. State,* 131 Ga. App. 587 (2) (206 SE2d 554).

No error is shown in defendant's Enumerations 6, 7 and 10.

9. Closely related to this last division is defendant's Enumeration 8. The defendant requested that the trial court copy, seal and preserve for inclusion in the record the materials it had reviewed in camera. The purpose of the request was to permit appellate review of the trial court's Brady evaluation of these documents. The court declined to retain those materials not disclosed and defendant asserts this as error. This appears to be an issue of first impression, and neither the state nor the defense has cited any authority on this point in their briefs.

Research of the Georgia cases reveals that the Brady requirements are met by the court's in camera inspection of the state's files and disclosure of arguably favorable material, if any. See *Street v. State,* 237 Ga. 307 (227 SE2d 750); *Fleming v. State,* 236 Ga. 434, 438 (224 SE2d 15); *Payne v. State,* 233 Ga. 294 (210 SE2d 775); *Hicks v. State,* 232 Ga. 393 (207 SE2d 30).

The federal cases also suggest that an in camera review procedure in state courts will comply with Brady. See Williams v. Dutton, 431 F2d 70 (5th Cir. 1970); Williams v. Dutton, 400 F2d 797 (5th Cir. 1968), cert. den., 393 U. S. 1105 (89 SC 908, 21 LE2d 799) (1969).

The closest case dealing with the question defendant raises is our recent decision of *Popham v. State,* 138 Ga.

App. 876. In that case the trial court denied that portion of the defendant's Brady motion which sought that material examined by the court be filed and sealed for possible appellate review. We did not reach that question, however, finding reversible error in the state's failure to comport with the Brady requirements in failing to turn over to the trial court for its inspection twenty-two tape-recorded statements.

Likewise, it is not necessary for us to rule on defendant's claim of error herein. Where a defendant moves pursuant to Brady v. Maryland, supra, for disclosure of material arguably favorable to him, and it is asserted that the state has not fulfilled its obligations under that doctrine, then the burden is on the defendant to show that his case has been materially prejudiced thereby. Street v. State, supra; Hicks v. State, 232 Ga. 393, 395 (207 SE2d 30). See Payne v. State, 233 Ga. 294, 296, supra. There has been no such showing here.

"The Dutton in camera procedure is a suggestion, not a constitutional mandate that the trial judge rummage through all government evidence prior to trial. The trial court's arguable over-dependence on the 'benevolence of the prosecutor,' Williams v. Dutton, 400 F2d at 800, for disclosure of evidence material to the defense cannot operate ipso facto as a denial of Brady Due Process. An aggrieved appellant must show some material prejudice resulting from the trial judge's failure to review in camera, . . ." United States v. Harris, 458 F2d 670, 677 (5th Cir. 1972).

Defendant has had the benefit of both an extensive pre-trial evidentiary hearing and an extensive evidentiary hearing on his extraordinary motion for new trial. He is also fully aware of the state's evidence against him, having been afforded a full trial. Prior to his trial the court reviewed three state files and kept them with him during the course of the trial so as to be certain that all Brady material, if any, would be disclosed. At various points the court verbally informed counsel of some of the more pertinent contents of the files. Despite all of this, defendant has been unable to carry his burden of showing that his case has been materially prejudiced by the court's refusal to preserve copies of nondisclosed material for

appellate review.

If it was error for the trial court to refuse to copy, seal, preserve and forward those documents for our review—a question we need not and do not decide—then it was harmless error.

Accordingly, Enumeration 8 is without merit.

10. Enumeration 11 is based on the general grounds. There is no merit in this enumeration of error. On appellate review every presumption and inference is in favor of the verdict, and the testimony and evidence are construed in the light most favorable to the prevailing party and the verdict rendered. *Johnson v. State,* 231 Ga. 138 (200 SE2d 734); *Justice v. State,* 135 Ga. App. 902 (219 SE2d 592); *Townsend v. State,* 127 Ga. App. 797 (195 SE2d 474). We have thoroughly reviewed all the transcripts and the entire record, and find that the evidence adduced amply supports the verdict of conviction.

11. Enumeration 12 claims as error the court's denial of defendant's motion for new trial. Each of the particulars raised in that motion have been disposed of by the first ten divisions of this opinion, and no further error is shown.

12. In Enumeration 9, the final one for our consideration, defendant asserts as error the trial court's refusal to supply defense counsel with a copy of the presentence report prepared by probation authorities. It is urged that defendant was denied fundamental fairness in his presentence hearing by the court's use of the report and the defendant's inability to rebut the validity of the material contained in the report. Defendant also asserts that Code Ann. § 27-2720, which makes such reports confidential, was not intended by the legislature to exclude the defendant and his counsel from access to it. This enumeration is without merit.

In the recent decision of *Munsford v. State,* 235 Ga. 38, 45 (218 SE2d 792), our Supreme Court confronted and resolved this question adversely to defendant. "The information in these [probation] reports cannot be regarded as 'evidence' either in aggravation or in mitigation as such reports are not a part of the evidence introduced at the pre-sentence hearing. Undoubtedly, in

many instances they also have been considered by the trial judge in fixing the length of the sentence. The 1974 statute, Code Ann. § 27-2503 (a), does not permit this use of those reports. Therefore, if a pre-sentence report contains any matter adverse to the defendant and likely to influence the decision to suspend or probate the sentence, it should be revealed to defense counsel by the trial judge in advance of the pre-sentence hearing to give the accused an opportunity for explanation or rebuttal. However, since the statute (Code Ann. § 27-2709, 10) does not require the content of the report to be shared with counsel, we must conclude that it is in the sound discretion of the trial judge whether to reveal the content of the report to counsel for the accused and for the state.

"We hold that the trial court was authorized to consider these reports for the purpose of deciding whether to suspend or probate all or some part of the sentences to be imposed in the case as provided in Code Ann. § 27-2709. Since the transcript does not show these reports were used by the trial judge to increase the length of the sentences imposed in the case, we find no cause for reversal. The sentences given were well below the 20-year maximum sentence which could have been imposed in the case and no resulting prejudice to appellants is shown by the consideration which the trial judge gave to these presentence reports."

In the instant case the trial court recited to counsel certain allegations contained in the report of other crimes committed by defendant for which he had not yet been tried. Defense counsel were therefore aware of the report's more detrimental contents. The court then told defense counsel that he could not and would not use such allegations in fixing the defendant's sentence. "[T]hese are mere charges and they are mere allegations . . . [and] I cannot use them in this sentence . . . I can't convict somebody because of what somebody said his reputation is . . . I cannot base my decision and do not base my decision on those matters. . . [T]he court has got to pass the sentence that he feels that is justifiable in the case and he can substantiate."

The court thereupon sentenced defendant to a term of fifteen years, the maximum sentence possible being

thirty years. Code Ann. § 79A-811. On the basis of *Munsford v. State,* 235 Ga. 38, supra, the contents of the transcript of the presentence hearing, and the sentence imposed, we cannot say that the court abused its discretion in failing to give counsel copies of the report. The sentencing procedure was fair and proper.

*Judgment affirmed. Bell, C. J., and Stolz, J., concur.*

ARGUED SEPTEMBER 20, 1976 — DECIDED NOVEMBER 5, 1976 — REHEARING DENIED DECEMBER 13, 1976 — 

*Moulton, Carriere, Cavan & Maloof, J. Wayne Moulton, Bryan M. Cavan,* for appellant.

*William H. Ison, District Attorney, Douglas N. Peters, Assistant District Attorney,* for appellee.