## 28871. HILL v. THE STATE.

UNDERCOFLER, Justice.

Steven Ray Yancey, a taxicab driver, was found dead of gunshot wounds next to his cab on a rural dirt road near the city of Carrollton, Carroll County, on the afternoon of March 30, 1973. The appellant, Alice Askew Hill, was indicted for Yancey's murder along with Lonnie Kidd and her brother, David Lee Askew. She was given a separate trial, found guilty, and sentenced to life imprisonment. Her amended motion for new trial was overruled, and she appeals.

The state's evidence showed substantially the following: At approximately 3:00 to 4:30 p.m. on March 30, 1973, three brothers, Bennie, Larry and Bobby Vaughn, and a friend, Lamar Taylor, were drinking beer and "pitching pennies" by a bridge on the side of a dirt road which connects the Hayes Mill road and the Bonner "black top" road near Carrollton. The Vaughn brothers testified that the appellant drove to their location from the direction of the "black top" road. With her in the car were Lonnie Kidd and David Lee Askew. The appellant told Taylor and the Vaughn brothers that she was taking Kidd and Askew to meet two girls. She then drove up the

dirt road and over a hill toward the Hayes Mill road. Some time later, the appellant returned alone from the direction of the Hayes Mill road and again stopped to talk with Taylor and the Vaughn brothers. Bobby Vaughn got into the car with her, and the two drove up to the top of the hill, turned around, and returned to the spot near the bridge.

Hill Seaton, a local resident, testified that he turned onto the dirt road from the Hayes Mill road and saw one Gaines leaving the area. Gaines told him that a man was lying dead further up on the dirt road. After briefly inspecting the body, Seaton told Gaines to stay on the scene while he went to phone for help. Seaton then proceeded along the dirt road, over the hill, and approached the bridge where the appellant, the Vaughn brothers, and Taylor were located. He told them that a man was lying dead on the other side of the hill and that they were to stay where they were. He continued down the dirt road and called the sheriff. The appellant then drove again to the top of the hill, this time with Lamar Taylor in the car, turned around, and drove back past the bridge toward the "black top" road and into Carrollton.

Shortly thereafter, Sheriff Robison arrived at the scene of the killing and told the Vaughn brothers, who were also in the process of leaving the area, to stay where they were. An investigation was immediately begun by Sheriff Robison, Deputy Sheriff Bell, and Officer Mc-Machen of the Georgia Division of Investigation.

Deputy Sheriff Bell testified that he spoke with the appellant the following day at her trailer. Although she was not yet a suspect, Bell gave her the Miranda warnings and she signed a waiver. She told him that she had taken Kidd and Askew out to the dirt road and dropped them off behind a car occupied by two girls whom the boys had arranged to meet. Officer McMachen interviewed the appellant on April 3, and she gave essentially the same story.

On April 5, the appellant, Kidd and Askew were arrested for Yancey's murder. The appellant was again given the Miranda warnings, and she signed another waiver. She again told the officers that she had let Kidd and Askew out behind a car occupied by two girls.

After the three suspects had been arrested and brought to the Carroll County jail, Kidd and Askew made signed statements. Askew admitted having killed Yancey. He said that he, Kidd and the appellant had planned to rob a cab driver and that on March 30 at approximately 1:00 p.m. the appellant drove them to her trailer to get the gun that was later used in the killing. He said that they then drove to a curb market where he called the cab company. They then drove to the dirt road and appellant let Kidd and Askew out by a house near the scene of the killing. The appellant was to drive to the top of the nearby hill, act as lookout, and return to get them.

Officer McMachen testified that shortly after Askew made his statement, he was brought into the room in which the appellant was being questioned. McMachen read Askew's statement to the appellant in Askew's presence. Askew was then taken out of the room, and McMachen asked the appellant if she wanted to change her story. She replied that she was going to stand by her original story. According to testimony given by McMachen in a Jackson-Denno hearing, the appellant stood silent and made no denials during the time that Askew was in the room.

Some time thereafter the appellant told Deputy Sheriff Bell that she had lied about the actual presence of the two girls and said that, instead, she dropped Kidd and Askew off by themselves to wait for the two girls. Later, at the appellant's preliminary hearing Kidd and Askew denied that the appellant had anything to do with Yancey's killing.

1. The appellant contends that Officer McMachen's testimony as to the contents of David Askew's statement was inadmissible hearsay.

The state contends that the statement was made during the concealment stage of a conspiracy to commit robbery and murder and is, therefore, admissible under the co-conspirator exception to the hearsay rule. This exception is contained in Code § 38-306 which provides: "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators, during the pendency of the criminal project shall be admissible against all." The exception is limited, however, by Code

§ 38-414: "The confession of one joint offender or conspirator, made after the enterprise is ended, shall be admissible only against himself." Both these Code sections clearly contemplate a point in time in certain cases when the conspiracy, including its concealment stage, is at an end so as to render a subsequent confession by an alleged co-conspirator inadmissible in the trial of a defendant who continues to deny his guilt.

Askew's statement, which is clearly in the nature of a confession, was made after all three co-suspects had been arrested and identified. The fact of the choate crime had already been revealed to the authorities, and there no longer remained any objects of the conspiracy to be furthered or accomplished. There was no showing of a conspiratorial scheme to hinder or mislead the authorities or to obstruct their prosecution of the cases against the alleged co-conspirators. Askew's statement was a mere narration of past events and cannot be said to have been made in concealment of the conspiracy. See *Howard v. State,* 109 Ga. 137 (4) (34 SE 330); *Morgan v. State,* 231 Ga. 280 (4) (201 SE2d 468); *Green v. State,* 115 Ga. App. 685, 689 (155 SE2d 655); *Smith v. State,* 123 Ga. App. 269 (1) (180 SE2d 556); *Gallman v. State,* 127 Ga. App. 849 (4) (195 SE2d 187).

Accordingly, it was error for the trial court to allow the testimony of Officer McMachen as to the contents of Askew's statement.

2. The state argues that because the appellant stood silent and did not deny the incriminating portions of the statement until after Askew had left the room, her conduct amounted to an adoptive admission whereby Askew's statement became her own. Code § 38-409. We do not agree. The appellant's prior denials of complicity in the crime and her denial immediately after Askew left the room compel a conclusion. that she denied Askew's incriminating statement.

"The principle that acquiescence or silence, when the circumstances require an answer or denial, may amount to an admission, has no application to a criminal cause where a person . accused by another with the commission of an offense immediately denies all knowledge of, or complicity in, its commission, even

though such denial be in general terms and does not in detail extend to each of the minor incriminating circumstances charged against him." *Ware v. State,* 96 Ga. 349 (23 SE 410); *Westberry v. State,* 174 Ga. 646 (2) (163 SE 729).

3. The appellant made a motion to quash the indictment on the ground that Negroes were systematically excluded from the Carroll County grand and traverse juries. In order to pursue her motion she apparently requested the trial court to direct the jury commissioners to inquire into the racial composition of the jury venires. However, as a condition precedent to such an order, the trial court imposed a $2,500 cash bond requirement to cover the salary of the commissioners for the "work" involved. The appellant was unable and unwilling to post the bond and cites the imposition of the bond requirement as error.

On the basis of the record before us, we cannot say that the trial court erred in requiring the bond. The brief colloquy in the record does not indicate what work the appellant was requesting the jury commissioners to perform.

4. Because we reverse for reasons stated in Division 1 of this opinion, we do not decide the question of whether the prosecutor's alleged improper argument was error.

*Judgment reversed. All the Justices concur.*

ARGUED MAY 13, 1974 — DECIDED SEPTEMBER 24, 1974.

*David Crosland,* for appellant.