*Attorney General, Kirby G. Atkinson,* for appellee.

## 30240. WOODALL v. THE STATE.

HILL, Justice.

This is an appeal by Alton Bariece Woodall from a conviction by jury on a charge of armed robbery and sentence of 15 years imprisonment. Defendant was acquitted of a charge of kidnapping in the same trial. The main issue presented in this appeal is the sufficiency of the evidence to sustain the verdict of guilty of armed robbery. The conviction of Gordon Welch, a co-indictee tried separately, was affirmed in *Welch v. State,* 235 Ga. 243 (1975).

On December 9, 1974, George West, manager of a service station south of Duluth in Gwinnett County, was closing up the station for the day. At around 9:45 p.m., a man who identified himself as Joe Downs came to the station, offered West a beer and asked West to make some telephone calls for him. Downs conversed with West until 10:55, when Downs left to go to the beer store. He returned shortly and went to use the phone in the booth on the station lot.

While Downs was in the phone booth, West saw a short man wearing a ski mask and overcoat, holding a shotgun, standing by a gas pump. The man ordered West to go inside and get the money out of the cash register. At first West refused, but the masked man persuaded him by pulling the bolt on the shotgun.

West entered the station and unlocked the register. When he noticed that the robber had not followed him inside, he relocked the register and tried to escape through the other door, which was locked. While West looked for the right key, Downs entered the office. West told him that a robbery was in progress and not to do anything foolish. The robber came to the door and ordered both men to come out of the office. West unlocked the cash register, and Downs and West went outside with the robber behind.

The robber ordered West to get into West's car. The

robber got into the back seat and ordered West to drive. When he noticed that Downs had disappeared the robber said: "Where is the other guy?" West looked around and saw Downs' car on the lot, but Downs was not in sight. The robber, in the seat behind West, ordered him to drive on, which West did. The robber asked for the money. West said he didn't bring it. The robber ordered West to turn around and go back for the money. The rear window of the car was coated with ice, and West backed into a ditch.

The robber ordered West to get out and open the rear door. (The rear door on the driver's side had no inside handle.) West got out but took that opportunity to escape. He ran back to the station and called the police. Downs and his automobile were gone. He discovered that the bills, $203, were gone from the cash register. West was away from the station 15 minutes.

West told the police about the robbery. After the police left, West was clearing up things at the station when a man walked up and asked if the phone worked. The man resembled the robber in height and weight, so West contacted the police again. They arrived one or two minutes later. The man identified himself as Gordon Welch. This occurred about an hour after the robbery took place.

West testified that the robber was 5'4" to 5'6" tall and weighed between 140 and 160 pounds. He was certain that the robber was not 6 feet tall. He said the robber was wearing a ski mask with a green ring around it, which permitted part of his eyes and nose and a little of his face to show. The robber appeared to have a rounded face with a fair complexion, although West stated that his attention was focused on the gun. West testified that the robber seemed drunk or doped and that his speech was slurred. He testified that the masked robber was never in the office where the cash register was located, nor did he take any money from West's person. West identified the coat, ski mask, and gun.

At trial, defendant Woodall put on the ski mask and overcoat. West judged the defendant to be 6 feet tall and weigh 180 to 185 pounds. He said he didn't think that defendant Woodall was the man who robbed him at gunpoint.

Officer J. B. Riley of the Gwinnett County Police Department testified that he answered a robbery call from the service station at around 11:30 p.m. on December 9th. He returned to the station about 40 minutes later and found Gordon Welch, 5'7" to 5'8" tall, weighing about 140 pounds. He placed Welch under arrest, read him his Miranda rights, and turned him over to Detective White.

Detective Carl White testified that he received a radio dispatch to go to the service station. He had a conversation there with Welch which led him, accompanied by Welch, to a dirt road and to a spot in a ditch five to seven feet from the road, where he found a shotgun, a coat and a ski mask. These items were located at a point about half way between the station and the place where West's car went into the ditch.

White took a statement from Welch and obtained warrants for the arrest of defendant Alton Bariece Woodall. He went to Woodall's residence and arrested him. White also had a warrant for the arrest of Ladell Woodall, but did not arrest him because he was, to the best of the officer's knowledge, in Florida.

Detective B. H. Blannott testified that he accompanied White to arrest the defendant at 4:30 or 5:00 in the morning. They knocked and were met almost immediately by the defendant, who was dressed in trousers and a T-shirt, with no shoes on. They entered and presented him with the warrant, simultaneously asking if he knew what this was all about. He replied that he did. Blannott said that he did not know whether the defendant meant that he knew about warrants or whether he meant he knew about the crimes charged in those warrants. They searched the defendant and found no money.

Detective White testified that en route to the police station Woodall told them that his car had been seen in the vicinity of the service station where all the police cars were. He said Woodall said that ". . . it would have to be proved that he knew what the guy was going to do when the guy got out of the car."

Gordon Welch was called to the stand as a witness for the state. He testified that he is the defendant's brother-in-law.

Welch testified that he believed he went to the

defendant's house on December 9, the day of the robbery, but that he was drinking heavily and does not remember very much. He testified that he didn't remember if Ladell Woodall was there and didn't remember leaving the defendant's trailer or where he went from there.

The state showed Welch a signed statement which he acknowledged contained his signature. The prosecution examined Welch using this statement but Welch responded "I don't remember" to each question. Over defense objection, Welch admitted that he had been convicted the day before for armed robbery and kidnapping in connection with this same transaction.

Pleading entrapment the state was allowed to recall Detective White to introduce Welch's statement for the purpose of impeaching its own witness. That statement showed that Welch let the defendant and Ladell Woodall out on a dirt road in the vicinity of the service station, then drove to another location and parked. Welch waited 20 to 25 minutes, heard the sound of running feet, and saw his co-conspirators coming.[1] The defendant gave the coat and shotgun to Welch, instructing him to hide them. When Welch left the car to hide the items the other two drove away without him. Welch hid the items and waited. Finally he went to the nearest telephone, which happened to be at the service station, and called the police. The connection was bad so he hung up to call back but the police arrived in the meantime.

The statement also showed that defendant and Ladell Woodall were discussing the robbery of the station after noon on December 9, that the defendant said that it would be an easy job with a lot of money involved, and that they left the defendant's house at 9:30 or 9:45, stopped to buy a 6-pack of beer, and then the defendant told Welch where to let them out.

James T. Burton, chief criminal investigator with the D. A.'s office in Gwinnett County, called by the state to impeach Welch, testified that he had a conversation with

---

[1]According to Welch's statement, both Woodalls came not from the direction of the station but from the direction where West's car was in the ditch.

Welch the week before trial in the presence of Welch's attorney during which he went over Welch's statement with him and the attorney. He testified that Welch had no difficulty recalling anything in the statement and had drawn a diagram to accompany it. He testified that Welch said he threw Ladell Woodall's name into the statement to cover for a third party whose name he would not reveal.

Burton testified on cross examination that several attempts were made to locate Joe Downs, but his whereabouts were completely unknown. Downs apparently was a "transient alcoholic" with several addresses.

Eddie Woodall, the defendant's father, testified for the state that the shotgun in evidence belonged to him and that he had given it to his son to guard his cattle against wild dogs while he was in Florida visiting his other son, Ladell, on Thanksgiving. He also testified that the defendant bought a ski mask to wear while feeding the cattle in cold weather.

At the close of the state's evidence, the defense moved for a directed verdict on the grounds that (1) no money was taken from West's person and a third person might have taken the money in the cash register; (2) the appellant did not kidnap anyone. The motion was denied.

The defendant took the stand to testify in his own behalf. He testified that he first saw Welch at 12:00 noon on the day of the robbery and that he took him to a store to buy some beer. The defendant then took Welch home. He saw Welch again at 3:15 or 3:30 when Welch came to the defendant's trailer to call the bus station to find out when a bus left for South Carolina. Welch then left. Shortly afterwards Welch's wife came to the trailer in a distressed state and asked the defendant to call the police to intervene in a domestic disturbance Welch and his wife were having. The defendant went to Welch's house and tried to get him to leave town. He drove Welch to the bus station, then put him out at a beer store when Welch refused to leave on the bus.

The defendant testified that he and his wife left home at 7:00 or 7:30 and returned after 9:00 to find Welch waiting in their trailer. Welch asked the defendant to take him to catch the 11:30 bus. They left at 9:45 to go to

the bus station. En route Welch asked to borrow some money, but the defendant did not have any.

According to the defendant, Welch then asked him to drive to Lemmie Rogers' house so that Welch could borrow money from Rogers. They got as far as a dirt road which leads to Rogers' house, in the vicinity of the service station, when Welch cursed and said that he couldn't borrow money from Rogers because he already owed Rogers $100.

The defendant testified that he stopped the car and asked Welch, who was still drinking, what he wanted to do. Welch grabbed the shotgun and coat, which were in the back seat of the car, and stumbled into the woods heading away from the station. The defendant said he rode around 30 to 45 minutes looking for Welch until he saw the police cars at the station. He said to himself "Let's get the hell out of here" and drove home. He denied that he was ever at the station that night.

Woodall testified that the coat in the car belonged to Ladell Woodall who left it for the children to wear in the winter while he was in Florida. He denied that he had ever seen the ski mask introduced into evidence by the state, saying that the one he bought the week before to wear while feeding the livestock was a different one. The defendant stated that after he went home he watched a football game on TV and went to sleep on the couch. His wife came in, turned off the TV, and tried to awaken him. He told her to leave him alone and he went back to sleep. Between 3:00 and 4:00, he was awakened by car lights shining through his windows. He got up and looked out the window. He heard a knock, opened the door, and admitted the men who identified themselves as the sheriff and a detective. They asked if he was Alton Bariece Woodall and said they had a warrant for his arrest. They asked where Ladell Woodall was, and the defendant said he was in Florida.

Woodall asked to see the warrant. As Detective Blannott handed the warrant to Woodall, he asked the question, "Do you know what this is all about?" The appellant opened the warrant, read the words "armed robbery," and said that he did.

In the car the detective read the defendant's rights to

him and told him that if he gave them a statement, it would go light on him. The defendant said he had nothing to say. He denied saying that they would have to prove that he knew what was going to happen to convict him.

On cross examination, Woodall denied that Welch had mentioned that he was going to rob that station. He explained that he said "Let's get the hell out of here" to himself because he saw all the police cars and knew that something was wrong. He stated that he was apprehensive of the police because they had always harassed him.

The defendant's wife's testimony confirmed that of her husband's. When the defendant left to take Welch to the bus station about 9:30 or 10, he asked his wife if she wished to go with him. She produced a phone bill showing a call made that night to the town in South Carolina where Welch's mother resided. When the defendant left to take Welch to the bus station, Welch had his suitcase and supposedly was going to catch a bus to South Carolina. Mrs. Woodall testified that Welch was very drunk.

The defendant enumerates as error the overruling of his motion for directed verdict of acquittal based on the ground that no money was shown to have been taken from West's person and a third person could have taken the money in the cash register. He also enumerates as error that the verdict is contrary to the evidence and to the law. In support of this enumeration, he contends that the evidence did not show a taking of property from the person or immediate presence of another, that the probative evidence did not show that he participated in the crime, and that there was a fatal variance between the allegata and the probata in that the indictment charged that he and Welch took money from the person of George West and the proof offered at trial was at variance from the indictment.

Enumerations of error based upon the overruling of a motion for directed verdict of acquittal and enumerations of error based upon the general grounds that the verdict was contrary to the law and the evidence may be considered together, both as to the scope and sufficiency of the evidence. *Bethay v. State,* 235 Ga. 371 (1) (1975).

In determining the sufficiency of the evidence

against Woodall, Welch's statement introduced by Detective White to impeach Welch, and the testimony of Investigator Burton offered to impeach Welch, cannot be considered. Prior inconsistent statements admitted at trial for the purpose of impeaching the testimony of a witness who is not a party are not substantive evidence and have no probative value. They are admitted solely for impeachment purposes and do not prove the facts stated therein. *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1 (9) (5 SE2d 214) (1939); *Willis v. Bozeman,* 224 Ga. 729, 731 (164 SE2d 841) (1968); *Henry Grady Hotel v. Grady Motors,* 96 Ga. App. 416, 420 (100 SE2d 125) (1957), and cits. See also *Hill v. State,* 232 Ga. 800 (1) (209 SE2d 153) (1974); *Poston v. State,* 233 Ga. 828 (2) (213 SE2d 686) (1975), and Code Ann. § 38-414.

Excluding from consideration the evidence introduced to impeach Welch, there was probative evidence (to wit, the testimony of the defendant and West) from which the jury could find that Welch was the actual perpetrator of the robbery, that this defendant drove Welch to the vicinity of the service station, that Welch took a shotgun, ski mask and overcoat from the defendant's car, all of which were used in the robbery, that this defendant drove around near the station while the robbery was in progress, either looking for or waiting on Welch, that this defendant fled the scene when he saw police cars at the station, and that he made statements to police possibly indicating guilty knowledge of the robbery.

The foregoing evidence as to this defendant is all circumstantial. Code Ann. § 38-109 provides that: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." In determining whether the circumstantial evidence excludes every other reasonable hypothesis except that of guilt, the testimony of the accused must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted. *Sentell v. State,* 227 Ga. 153, 156 (179 SE2d 234) (1971).

When the testimony of this defendant is taken into

consideration, the evidence is consistent with the reasonable hypothesis that Welch was drinking heavily and had been fighting with his wife, that the defendant was driving Welch to the bus station to go to South Carolina, that Welch needed money, that his need for money took them toward the home of Lemmie Rogers as well as to the vicinity of the service station, that Welch took the shotgun and coat without defendant's permission, that the defendant drove around looking for Welch, that Welch committed the robbery, and that suspecting that Welch had gotten into trouble the defendant ceased looking for him and went home when he saw the police cars at the station.

Moreover, the state did not prove at this trial, by direct or circumstantial evidence, that either Welch or Woodall or any other person shown to be a conspirator took "property of another" to wit: the $203. Such taking of property is an essential element of the crime of armed robbery. Code Ann. § 27-1902.

On the contrary, the evidence in this case is undisputed that this defendant was not the masked robber, and is undisputed that the masked robber did not take the $203. Only by speculation and conjecture could we assume that this defendant or a conspirator of his took the money, and speculation and conjecture will not sustain a conviction.

The result in *Welch v. State,* 235 Ga. 243, supra, is not inconsistent with the result reached here. In *Welch,* the evidence showed that Welch and two conspirators planned the robbery, that two of them went to the service station, and that one of these was the masked robber. That jury was authorized to find that, when the masked robber failed to get the money, the other conspirator who was nearby did.

The evidence is not sufficient to sustain the verdict in this case. For this reason the judgment of the court below must be reversed. In view of this disposition of the case, the other enumerations of error need not be considered.

*Judgment reversed. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Hall, J., who dissent.*

ARGUED SEPTEMBER 8, 1975 — DECIDED NOVEMBER 4, 1975.

*Wynn Pelham,* for appellant.

*Bryant Huff, District Attorney, Dawson Jackson, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Assistant Attorney General,* for appellee.

HALL, Justice, dissenting.

The majority opinion holds that as a matter of law Woodall must be acquitted of the charge of armed robbery. The result is that he cannot be tried again. *Marchman v. State,* 234 Ga. 40 (215 SE2d 467) (1975). I dissent for the reason that the evidence listed below supports a finding that Woodall was a co-conspirator in the robbery.

1. Just prior to the robbery Woodall had driven Welch to a side road in the immediate vicinity of the Bay Service Station.

2. The ski mask, shotgun and overcoat used in the robbery were in Woodall's car until removed by Welch. Further, the shotgun had recently been given to Woodall by his father. Woodall had also recently purchased a ski mask similar to that which was used in the robbery.

3. Welch had been drinking quite heavily in Woodall's presence prior to his leaving Woodall's car and heading in the direction of the Bay Service Station.

4. The individual who robbed the gas station fits the description of Welch, as well as appearing somewhat intoxicated at the time of the robbery.

5. After Welch had embarked from Woodall's car and headed in the direction of the gas station, Woodall drove around in the immediate vicinity of this station for approximately thirty minutes until he saw police cars at the station, at which time he fled.

6. After Welch's confession at the scene of the robbery, the officers obtained an arrest warrant and went to Woodall's residence at about 4:30 or 5:00 in the morning. Woodall was dressed. The officers presented the arrest warrant and asked him "if he knew what this was all about and he replied that he did."

7. Woodall admitted leaving his residence with

Welch about an hour before the robbery and further admitted that Welch had been drinking at the time.

It is important to remember that "[t]he mere possibility that someone other than the defendant committed the crime . . . is not such a reasonable hypothesis as must be excluded in order for circumstantial evidence to authorize a verdict of guilty." *Eason v. State,* 217 Ga. 831 (4) (125 SE2d 488) (1962). While the evidence of Woodall's guilt is circumstantial, it is nevertheless evidence of guilt. "Criminals do not normally choose to engage in felonious enterprises before an audience of police officials." Trupiano v. United States, 334 U. S. 699, 715.

I am authorized to state that Chief Justice Nichols and Presiding Justice Undercofler concur in this dissent.