Rockingham
No. 2007-573

THE STATE OF NEW HAMPSHIRE

v.

JOHN FORBES

Argued: May 22, 2008
Opinion Issued: August 6, 2008

*Kelly A. Ayotte,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, John Forbes, was convicted by a jury in Superior Court of one count of aggravated felonious sexual assault. *See* RSA 632-A:2, II (2007). On appeal, he argues that the Trial Court (*Coffey,* J.) erred in admitting evidence of his silence as an adoptive admission pursuant to New Hampshire Rule of Evidence 801(d)(2)(B). Because we agree that the trial court unsustainably exercised its discretion by admitting this evidence, we reverse and remand.

The following undisputed facts are relevant to this appeal. In July 2005, the defendant was indicted by a grand jury on one count of aggravated felonious sexual assault of a minor child, KS. *See* RSA 632-A:2, II. The indictment alleged that "on or between the first day of June and the first day of November in the year ... 2004 ... [the defendant] purposely touched the genitalia of KS with his hand under circumstances that can reasonably be construed as being for the purpose of sexual arousal or gratification at a time when KS was under 13 years of age."

Prior to trial, the court held an *in camera* hearing on the defendant's motion to exclude certain testimony by his daughter, Wanda Roberts. At that hearing, Roberts testified about three conversations involving the defendant that the State intended to introduce at trial. For purposes of this appeal, only Roberts' testimony regarding two of those conversations is relevant.

With respect to the first conversation, Roberts testified that, the day after she learned of KS' allegations, she called the defendant to confront him. At that time, Roberts asked the defendant to "tell [her] it's not true." Initially, the defendant appeared confused, responding, "what are you talking about." However, once Roberts clarified by saying, "tell me it's not true about [KS]," the defendant immediately replied, "I never touched [KS]." Although it was disputed, the court found that, at that point, the substance of KS' allegations had not been disclosed to the defendant and, thus, his response was admissible as "an admission." *See State v. Lesnick,*

141 N.H. 121, 129-30 (1996) (permitting the admission of "extrajudicial statement[s that] giv[e] rise to a reasonable inference of guilt"). The defendant does not appeal this ruling.

As to the second conversation, Roberts testified that, at some point following the phone conversation, she and the defendant's sister, Hazel Kelley, had a discussion about KS' allegations while the defendant was "sitting there." During that conversation, Kelley told Roberts that the defendant was "not going to plead guilty to something he didn't do." Roberts responded by stating: "I can't say for sure that it happened. I wasn't there. I don't know. But from my point of view, I do believe [KS] . . . ." Roberts testified that, when she said that, the defendant "just sat there" and remained silent. The timing, location and other details of this discussion are not in the record. However, the court overruled the defendant's objection to this evidence, stating:

the fact that Mr. Forbes remained silent while there was a family discussion going on about him not pleading guilty to something he didn't do and Wanda Roberts or somebody else saying well, how do you expect me to believe him, and his maintaining of silence, that also comes in. That comes in under—it's not excluded as hearsay. It's an admission and it is under 801(d)(2)(B): when a party agrees with the statement, does not deny a statement that an ordinary person would deny if not true. And that's the case here. An ordinary person, in the course of a discussion about him or herself, would speak up and say hey, that's not true.

Following a two-day trial, at which the defendant did not testify, the jury found the defendant guilty. See RSA 632-A:2, II. The trial court sentenced the defendant to ten to twenty years.

The only challenge raised by the defendant on appeal is to the trial court's admission, under Rule 801(d)(2)(B), of evidence of his silence during the discussion between Roberts and Kelley. The defendant contends that the trial court erred in concluding that his silence amounted to an adoptive admission of Roberts' statement because "the record fails to establish that [he] heard Roberts' accusation," see, e.g., United States v. Moore, 522 F.2d 1068, 1076-78 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976), and "even if [he] heard the conversation, the setting tended to diminish his motive to deny the accusation," see, e.g., State v. Wargo, 83 N.H. 532, 534 (1929). We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. State v. Yates, 152 N.H. 245, 249 (2005).

 Pursuant to the New Hampshire Rules of Evidence, out-of-court statements "offered in evidence to prove the truth of the matter asserted" are hearsay, N.H. R. Ev. 801(c), and are generally not admissible at trial, N.H. R. Ev. 802. Rule 801(d)(2)(B) is an exception to this rule because it excludes from the definition of hearsay any statement that "is offered against a party and is . . . a statement of which the party has manifested adoption or belief in its truth." This exception includes the adoptive or tacit admission doctrine, *State v. Cook*, 135 N.H. 655, 663 (1992), upon which the trial court relied in admitting evidence of the defendant's silence in this case.

 Premised upon the theory "that the natural reaction of an innocent person to an untrue accusation is to deny it," 29A AM. JUR. 2D *Evidence* § 816, at 94 (2008), the adoptive admission doctrine permits the admission of an "incriminating or accusatory statement about the defendant" when such statement "is made within [the defendant's] presence and hearing" and "is not denied by him." *State v. Jansen*, 120 N.H. 616, 618 (1980). However, because of the inherent "uncertainty which attends interpreting a person's silence as an implied admission," 29A AM. JUR. 2D, *supra* § 814, at 90; *see* 32 C.J.S. *Evidence* § 392, at 112 (1996), several appellate courts have cautioned that "trial court[s] should be most reluctant to credit mere silence . . . as conduct sufficient for adoption of an inculpatory statement," *State v. Hoffman*, 828 P.2d 805, 810 (Haw. 1992) (quotations omitted); *Comm. v. Babbitt*, 723 N.E.2d 17, 22 (Mass. 2000) ("Because silence may mean something other than agreement or acknowledgement of guilt (it may mean inattention or perplexity, for instance), evidence of adoptive admissions by silence must be received and applied with caution."); *People v. Aughinbaugh*, 223 N.E.2d 117, 119 (Ill. 1967) (same); *see also State v. Marr*, 536 A.2d 1108, 1110 (Me. 1988) (recognizing that "the adoptive admission of a defendant charged with a crime is tantamount to a confession stripped of constitutional safeguards against self-incrimination"). Indeed, concerns over the propriety of the theory "that an innocent person *always* objects when confronted with a baseless accusation," have even led some courts to reject the use of silence as evidence of an admission of guilt. *Ex Parte Marek*, 556 So. 2d 375, 381-82 (Ala. 1989) (abolishing the tacit admission rule as to both pre- and post-arrest silence because "neither logic nor common experience any longer supports the tacit admission rule, if, indeed, either ever supported it"); *Comm. v. Dravecz*, 227 A.2d 904, 909 (Pa. 1967); *see also Comm. v. DiNicola*, 866 A.2d 329, 337 n.8 (Pa. 2005) (acknowledging that *Dravecz* "rejected the tacit admission rule").

 We agree that the possible motivations for a person's silence in the face of an untruthful accusation are numerous. *See, e.g., People v. DeGeorge,*

541 N.E.2d 11, 13 (N.Y. 1989) (noting that silence can be motivated by, among other things, "a person's awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later be used against him at trial" (quotation omitted)); *Dravecz*, 227 A.2d at 906 ("There are persons possessed of such dignity and pride that they would treat with silent contempt a dishonest accusation. Are they to be punished for refusing to dignify with a denial what they regard as wholly false and reprehensible?"). Accordingly, for evidence of an adoptive admission by silence to be admissible as direct evidence of guilt, the trial court must determine that the defendant had sufficient "opportunity and motive to deny the truth of the accusations," *Jansen*, 120 N.H. at 618, to permit a reasonable jury to conclude that his "failure to respond [wa]s so unnatural that it supports the inference that the [defendant] acquiesced in the statement," *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 67 (1st Cir. 2002) (citing J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 801(d)(2)(B)[01], at 801-202 n.15 (1985)); *see also Horan v. Byrnes*, 72 N.H. 93, 102 (1903) (explaining that "[t]he neglect to reply to statements made in one's presence is not an admission of their truth unless they are . . . made under such circumstances as to *require* a reply" (emphasis added)). The court must also determine that "no other explanation is equally consistent with the defendant's words or conduct." 29A AM. JUR. 2D, *supra* § 818, at 98, § 812, at 89.

■ Given the caution with which we must consider the use of silence as direct evidence of guilt, and "[t]he tendency of th[is type of] evidence to prejudice the jury," *Wargo*, 83 N.H. at 534, we cannot find on this record that the State provided sufficient evidence to demonstrate that it would be unnatural for an innocent person to remain silent in these circumstances. *Cf.* 32 C.J.S. *supra* § 392, at 112 ("the probative value of silence, unless under circumstances that compel speech, is so weak and so fraught with speculation as to its reason that it is far outweighed by the prejudicial effect of introducing such evidence"). First, from the scant evidence provided, it appears that the conversation between Kelley and Roberts took place in an informal, social setting, *see Weston-Smith*, 282 F.3d at 67, and the statement in question was not directed at the defendant, *see* 4 J. WIGMORE, EVIDENCE § 1072, at 117 (McNaughton rev. 1961) (explaining how it "is often the case where the statement is addressed to another person, and not to the party himself," that a defendant has "no motive for responding"). Moreover, the substance of Roberts' purported "accusation" tends to militate against a finding that the defendant would feel compelled to respond. Roberts prefaced her statement that she "believe[d her] niece," by acknowledging that she "wasn't there," doesn't "know," and "can't say for

sure" that the sexual assault occurred. While we recognize that application of the adoptive admission doctrine does not require "a direct accusation in so many words," *People v. Fauber*, 831 P.2d 249, 285 (Cal. 1992), *cert. denied*, 507 U.S. 1007 (1993), where, as here, the declarant's statements are suppositious and equivocal, the compulsion to respond is, at a minimum, diminished.

Finally, and most importantly, the record fails to demonstrate that the defendant had a motive to proclaim his innocence to either Kelley or Roberts. First, Kelley was defending the defendant during the conversation, which demonstrates that she already firmly believed in his innocence. In addition, in an earlier telephone conversation with Roberts, the defendant had already denied his guilt by saying: "I never touched [KS]." However, in spite of his assertion of innocence, Roberts' comments during her discussion with Kelley revealed that her opinion of the defendant's guilt was unwavering. Given that he had already denied his guilt, the defendant's silence in the face of Roberts' continued disbelief is, at best, ambiguous. It could, for example, be attributed, not to his agreement with Roberts' statement, but rather his realization that any effort on his part to convince Roberts of his innocence would have been futile.

In *Wargo*, we recognized futility as a critical factor in analyzing adoptive admissions. *Wargo*, 83 N.H. at 534. There, we found error in the trial court's admission of the defendant's silence as an adoptive admission where it would have been futile for the defendant to respond because the declarant stated, "You can say 'No' to this for a hundred years, but I see by your attitude that you are guilty." *Id.* The futility of a denial in this case is further supported by the fact that Kelley had just told Roberts that the defendant was "not going to plead guilty to something he didn't do" and had been immediately rebuffed by Roberts. To be sure, even the State concedes that the defendant "may have thought he could not convince Roberts." *See People v. Bishop*, 183 Cal. Rptr. 414, 417 (Ct. App. 1982) (holding that a victim's failure to respond to a statement denying that she was raped could not come in as an adoptive admission because, among other things, the victim had already stated that she was raped and "it was not necessary that she get in the last word in a futile argument").

Other courts have also recognized the significance of prior denials in analyzing whether a defendant has adopted a subsequent accusation by remaining silent. *See People v. Thurmond*, 338 P.2d 472, 476 (Cal. Dist. App. Ct. 1959); *Hill v. State*, 209 S.E.2d 153, 156 (Ga. 1974). In *Thurmond*, the defendant had been questioned by police officers for several hours, during which he maintained his innocence. *Thurmond*, 338 P.2d at 476. The police then asked the defendant if he would like to hear the accusations from the

complaining witness, the defendant replied that he would, and the witness was brought[,] into the interrogation room where he, "in direct terms[,] accused the defendant of performing the acts" for which the defendant was being investigated. *Id.* The defendant failed to respond and, when initially asked if he had any questions for the witness, said that he did not. *Id.* It was not until the police asked two more times whether he had any questions for the witness that the defendant asked the witness, "why are you saying this?" *Id.*

The State argued on appeal that the defendant's response when faced with the witness's accusations amounted to a tacit admission. *Id.* The court disagreed, holding that "[e]ven if it were to be conceded that defendant's comments wherein he asked [the witness] why he said the things were an equivocation amounting to a failure to deny the accusations, such would not amount to a tacit admission . . . since it [wa]s conceded that [the defendant] had consistently denied the commission of the acts charged." *Id.*; *see also People v. Staker*, 316 P.2d 725, 731-33 (Cal. Dist. Ct. App. 1957) (reaching the same result under similar circumstances).

Similarly, in *Hill*, the defendant was arrested for murder, was questioned by police officers, and, after waiving her *Miranda* rights, denied her complicity in the crime. *Hill*, 209 S.E.2d at 155. Unbeknownst to the defendant, at the same time, one of her co-conspirators was signing a statement admitting to the killing and implicating the defendant. *Id.* The investigating officer then brought the co-conspirator into the defendant's interrogation room, read the signed statement aloud, and the defendant "stood silent and made no denials." *Id.* Once the co-conspirator was removed from the room, the defendant stated "that she was going to stand by her original story." *Id.*

On appeal, the State contended that the defendant's failure to respond to the co-conspirator's assertions "amount[ed] to an adoptive admission." *Id.* at 156. The court disagreed, holding that "[t]he appellant's *prior* denials of complicity in the crime and her denial immediately after [the co-conspirator] left the room compel[led] a conclusion that she denied [the declarant's] incriminating statement." *Id.* (emphasis added). Accordingly, the court found that the trial court had erred in admitting this evidence. *Id.*

As in both *Thurmond* and *Hill*, the defendant in this case had already denied his guilt by the time of Roberts' accusation, a fact not mentioned in the trial court's analysis. The apparent futility of a response from the defendant, coupled with the nature and substance of the conversation, leads us to conclude that the record fails to demonstrate that the defendant had such motive to deny Roberts' accusation that his "failure to respond [wa]s so unnatural that it supports the inference that [he] acquiesced in [Roberts'] statement." *Weston-Smith*, 282 F.3d at 67. Having so deter-

mined, we need not address the defendant's remaining argument that the record does not indicate that he heard the statement in question. Accordingly, the trial court unsustainably exercised its discretion by admitting evidence of the defendant's silence.

Although the admission of inadmissible evidence does not always require reversal, *see, e.g., State v. Remick*, 149 N.H. 745, 748 (2003), in this case the State has not argued that such admission was harmless. Therefore, we cannot engage in a harmless error analysis and, instead, must conclude that the defendant met his burden on appeal, reverse the conviction, and remand for a new trial. *State v. Hammell*, 155 N.H. 47, 51 (2007).

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.