# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0423, <u>The State of New Hampshire v. Ronald L. Fuller</u>, the court on December 20, 2019, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Ronald L. Fuller, appeals his convictions, following a jury trial in the Superior Court (<u>Ignatius</u>, J.), on two counts of aggravated felonious sexual assault and one count of felonious sexual assault. <u>See</u> RSA 632-A:2, :3 (Supp. 2017). The defendant argues that the trial court erred by improperly: (1) admitting the testimony of a lay witness, either because it was irrelevant or because it exceeded the scope of lay testimony; and (2) allowing the State to question the defendant about a "different investigation." We reverse and remand because the trial court unsustainably exercised its discretion by admitting irrelevant testimony of a key witness. We also conclude that the trial court erroneously permitted the State to question the defendant about a different investigation.

The following facts are drawn from the record. Between February 2000 and approximately June 2005, the complainant, the niece of the defendant's long-time girlfriend, lived intermittently at the defendant's house when she was between 8 and 13 years of age. In November 2005, the complainant accused the defendant of attempting to inappropriately touch her at some point during 2003 and 2004. Although the defendant was charged with attempted felonious sexual assault, the State eventually <u>nol</u> <u>prossed</u> that indictment in December 2008. In 2013, when the complainant was 21 years old, she alleged that the defendant had done more than attempt to touch her; she accused him of sexually assaulting her between 2001 and 2004. The complainant testified that she did not tell the police in 2005 about the sexual assaults because she "was scared and not ready to admit what had happened." In 2014, the defendant was indicted on two counts of aggravated felonious sexual assault and one count of felonious sexual assault. In 2018, he was tried by a jury.

As the State's first witness, Police Officer Swift testified that she was an "assisting officer" in the case, tasked to "just . . . do follow ups" with various witnesses. Swift also testified that she had previously investigated about "two dozen" sexual assault cases, worked with a sexual assault response team, and attended multiple trainings about sexual assault. Following this recitation of her training and experience, the State asked Swift: "In any of the cases you've

investigated, were there late disclosures?"  Swift replied: "Yeah, majority of them are."

The defendant objected, arguing, in part, that no late disclosure was made in this case.  The trial court overruled this objection.  The State and Swift then had the following exchange:

Q. So I asked you, have you investigated a case in which there was a late disclosure?
A. Yes.
Q. Have you investigated cases in which the disclosure comes out piecemeal?
. . . .
A. Absolutely.
. . . .
Q. Have you investigated a case in which the victim remained in the home?
A. Yes.

The defendant moved to strike this testimony, questioning its relevance.  The trial court denied the motion, but told the State not to restate the question and to move on.  The defendant was subsequently convicted on all three indictments.  This appeal followed.

The defendant argues that Swift's testimony was irrelevant.  We agree.  We review a trial court's decision to admit testimony subject to the unsustainable exercise of discretion standard.  State v. Gonzalez, 150 N.H. 74, 77 (2003).  To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  See id.

New Hampshire Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  N.H. R. Ev. 401.  It is undisputed that the State did not move to have Swift qualified as an expert and, therefore, the trial court could not have qualified her as such.

Swift testified that she had investigated "over two dozen" sexual assault cases.  She then testified that a "majority" of sexual assault cases she had investigated involved late disclosures, that she had "[a]bsolutely" investigated cases in which the disclosure was made "piecemeal," and agreed that she had investigated a case in which the victim remained in the perpetrator's home.

The State posits that this testimony was relevant because it could help the jury determine "whether the victim's late disclosure was a result of

2

fabricated allegations." We have considered "the behavioral characteristics commonly found in child abuse victims" an appropriate area of expert testimony to preempt or rebut any inferences that a child complainant lacks credibility in a child sexual abuse case. State v. Cressey, 137 N.H. 402, 411-12 (1993). Swift's testimony at issue here, however, was admitted as lay testimony and pertained only to observations she made while investigating other cases. Nonetheless, in the absence of reliable expert testimony linking Swift's observations to the nature of the complainant's disclosures and conduct in this case, her testimony about victims' conduct and disclosures made in other cases had no bearing on whether the complainant made credible delayed or piecemeal disclosures in this case. We note that, even if the State had qualified Swift as an expert, any testimony about a complainant's specific behavior is inadmissible if its purpose is to prove that abuse occurred or if, as an expert, she testified that the complainant's specific behaviors are consistent with or common to the behaviors of a person who has been sexually abused. See State v. Marden, 172 N.H. 258, 263 (2019). The officer's testimony was thus irrelevant and it was unreasonable for the trial court to admit it.

We also conclude that admitting this testimony prejudiced the defendant's case. See Gonzalez, 150 N.H. at 77. The State's case largely hinged upon the jury's assessment of the complainant's credibility; she was the only witness who testified to two of the three acts with which the defendant was charged. The defendant's defense, on the other hand, was primarily based upon discrediting the complainant. The State improperly relied upon Swift's testimony to buttress the complainant's credibility. Indeed, the prosecutor told the jury in her opening statement that Swift would be one witness who would "fill in the complete picture" and "corroborate" the complainant's testimony. Then, the State spoke at length about Swift's testimony in its closing argument, telling the jury that Swift's "training and experience" allowed her to say that it is "usual for people to delay their disclosure of abuse, to come out with it piecemeal." Given the disproportionate significance a jury could attach to this testimony because of Swift's training and experience, see Cressey, 137 N.H. at 405, we conclude that the testimony prejudiced the defendant's case.

Accordingly, the trial court committed an unsustainable exercise of discretion by allowing Swift to testify as a lay witness about her experience investigating other sexual assault cases. Although we often address whether a trial court's erroneous evidentiary ruling constitutes harmless error, see Gonzalez, 150 N.H. at 79, here, the State does not argue harmless error. We therefore decline to conduct a harmless error analysis, and reverse the defendant's conviction. See State v. Forbes, 157 N.H. 570, 577 (2008).

We next address the defendant's second argument, that the trial court erred by permitting the State to question him about a "different investigation," in the interest of judicial economy because this issue may arise upon retrial. See State v. Sweeney, 151 N.H. 666, 674 (2005). Prior to trial, the State moved

3

to admit evidence pertaining to prior indictments and a trial involving allegations of sexual assault that the complainant's sister made against the defendant in order to prove intent, among other things. The trial court ruled this evidence inadmissible, and instructed counsel to "proceed with utmost caution to avoid any direct or cross-examination questions that might elicit information regarding prior indictments and/or trial proceedings."

At trial, the complainant testified that on one occasion she found a video camera hidden in the bathroom after she showered at the defendant's house. On cross-examination, the complainant testified that she did not tell the police about the camera in 2005, but that she disclosed this allegation to the police for the first time in 2013. The defendant testified that his camera was confiscated by the police when he was first arrested in 2005 and returned to him at some point thereafter.

Before its cross-examination of the defendant, the State argued that his testimony opened the door to evidence about the allegations made by the complainant's sister. The State proffered that the camera was confiscated in 2005 based upon the sister's allegations, and it was only returned after the charges stemming from those allegations were annulled. Although the State proffered no evidence that the police found anything incriminating on the camera, it argued that the defendant's testimony left the jury with the misimpression that "no evidence was found [on the camera], and that's inaccurate." The defendant proffered that the State's investigators found no incriminating evidence on the camera and objected to any questioning on the subject.

The trial court stated that the defendant "didn't open the door." Yet, it allowed the State to ask the defendant whether the camera was seized in connection with a "different investigation," to which the defendant replied, "No. Same case, different charge"; and whether the camera was returned "years later for reasons unrelated to this case," to which the defendant replied in the affirmative. The State then argued that the defendant's answer to the first question was misleading and opened the door to evidence regarding the sister's allegations because the camera was not seized in connection with "the same case." The trial court initially refused the State's request to admit such evidence, but it allowed the State to again ask whether the video camera was seized in 2005 in connection with a "different investigation." This time the defendant replied in the affirmative.

We agree with the trial court's initial determination that the defendant did not open the door to evidence regarding the sister's allegations.[1] The opening the door doctrine includes two distinct doctrines — the curative

---

[1] The record does not reveal the basis on which the trial court allowed the State to ask the defendant questions about a "different investigation."

4

admissibility and specific contradiction doctrines. <u>DePaula</u>, 170 N.H. at 146. Both parties agree that the specific contradiction doctrine applies here. That doctrine may be invoked when a party introduces admissible evidence that creates a "misleading advantage" for that party. <u>Id</u>. Inferential conclusions that may be drawn from a witness's testimony can create such a misleading advantage. <u>Id</u>. Once a misleading advantage is created, the opposing party is allowed to introduce previously suppressed or otherwise inadmissible evidence to counter that misleading advantage. <u>Id</u>. The rule thus prevents a party from successfully excluding evidence favorable to the opposing party and then selectively introducing that evidence for its own advantage, without allowing the opponent to place the evidence in its proper context. <u>State v. Morrill</u>, 154 N.H. 547, 550 (2006).

The State claims the defendant's testimony that the camera was taken by the police in 2005 and returned thereafter could have created several misimpressions, yet it fails to argue how the testimony created a misleading advantage. Indeed, the defendant's testimony created an unfavorable inference about his own case — that he was being investigated by the police in 2005 for reasons unrelated to the complainant's allegations. He testified that the police seized his camera in 2005, despite the fact that the complainant testified that she did not tell the police about the camera until 2013. There was thus no misleading advantage created by the defendant's testimony that needed to be countered through the admission of evidence previously ruled inadmissible. <u>Cf</u>. <u>State v. Wamala</u>, 158 N.H. 583, 586, 590 (2009) (concluding that evidence of prior uncharged assaults in sexual assault prosecution was admissible after the defendant created a misleading advantage by testifying that he could "never" sexually assault his child); <u>State v. Lopez</u>, 156 N.H. 416, 422-23 (2007) (concluding that trial court sustainably exercised its discretion in excluding evidence that the defendant cried in one interview with the police to rebut testimony that he did not cry in another interview, and noting that "[t]he fact that [evidence] could be said to lead the jury to a particular conclusion does not mean that the evidence was misleading"). Accordingly, we conclude that it was improper for the trial court to allow the State to question the defendant about a "different investigation."

<u>Reversed and remanded</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,
Clerk**